2011 OK 51

Tracy R. SMITH, Plaintiff/Appellant,

v.

Robert F. HINES, M.D., Robert F. Hines, M.D., Inc., Oklahoma Sports Science & Orthopaedics, PLLC, Defendants/Appellees,

and

St. Anthony North Ambulatory Surgical Center, LLC., Phillip A. Isaac, M.D., FRCA, Inc., Defendants.

No. 107,198.

Supreme Court of Oklahoma.

June 7, 2011.

Kenyatta R. Bethea, Oklahoma City, Oklahoma, for Plaintiff/Appellant.

Gus H. Buthman, Kevin Driskill, C. Scott Jones, Oklahoma City, Oklahoma, for Defendants/Appellees.

KAUGER, J.:

¶ 1 We granted certiorari to address whether the evidentiary materials presented by the plaintiff were sufficient to withstand a motion for summary judgment. We hold that they were.

## FACTS

¶ 2 On October 19, 2005, the plaintiff/appellant, Tracy R. Smith (Smith/patient), a field officer with the Oklahoma City Police Department, sought the care of the defendant/appellee, board-certified orthopedic surgeon, Dr. Robert Hines (Dr. Hines/doctor/surgeon), after suffering "problems" with her left knee and hearing it "pop" when she walked downstairs or squatted. Smith was diagnosed with chondromalacia, a softening of cartilage under the kneecap. After a course of "conservative treatment," the surgeon performed arthroscopic surgery on January 23, 2006.

¶ 3 It is undisputed that prior to the surgery Smith's problems were limited to her left knee and that her left thigh muscles functioned normally. The surgical notes state that there was an injection into the left knee, but they do not indicate that there was any nerve damage done to the left thigh during the procedure. Nevertheless, Smith alleged that following the procedure, she was approached by one of the postoperative nurses who indicated that there had been an "incident" during the operation which damaged her femoral nerve; and that the nurse allegedly told her that Dr. Hines would speak to her about the damage, but he never did.

¶ 4 Immediately after the surgery, it became apparent that the patient's left quadriceps (thigh) muscles were not functioning normally. Between January 24, 2006, and August 16, 2006, the patient saw the surgeon for eight post-surgical visits. She also underwent physical therapy. However, her left thigh muscle never returned to normal function and it began to atrophy—so much so that it appeared visibly smaller than her right thigh.

¶ 5 On May 10, 2006, an EMG and a nerve conduction study were performed on the patient by another doctor, Dr. Christopher M. Bouvette, a physician board-certified in Electrodiagnostic Medicine and Physical Medicine and Rehabilitation. Dr. Bouvette's report indicated that he had never seen this type of problem as a result of knee surgery. He recommended an MRI scan of the thigh and hip to make sure nothing was asserting

pressure on the femoral nerve causing the damage.

¶ 6 The surgeon noted on June 7, 2006, that, according to the MRI, the femoral nerve appeared normal. Smith did not see the surgeon after August 16, 2006. Two months later, on December 14, 2006, the patient was examined by a third doctor, Dr. Charles J. Jablecki (neurologist), a board-certified neurologist. It was his opinion that the femoral neuropathy was most probably caused by a compression at the level of the groin during the surgical procedure. However, he also indicated that "further information would be needed beyond the information present in the medical records to answer the causation question with medical certainty."[1]

¶ 7 On July 9, 2007, Smith filed a lawsuit alleging that: 1) the surgeon was negligent-his treatment fell below applicable standards of care; 2) as a result of a breach of that care the patient suffered permanent injury; and 3) the surgeon's negligence could also be inferred through the application of res ipsa loquitur.[2] On January 21, 2008, the surgeon filed a motion for summary judgment arguing that the patient failed to: 1) state a cause of action for negligence; 2) present the required expert testimony to support her cause of action; and 3) properly support her use of the res ipsa loquitur doctrine. The trial court granted summary judgment in favor of the surgeon on May 14, 2009, without explanation. The Court of Civil Appeals, in an unpublished opinion, affirmed the trial court. We granted certiorari on September 27, 2010.

## ¶ 8 THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT.

¶ 9 The surgeon argues that the patient's medical negligence action must fail because she has not: 1) provided any qualified medical expert witness to testify that the surgeon's performance was below acceptable medical standards thereby causing the alleged injury; and 2) made any showing that any instrumentality solely within the surgeon's control caused or could have cause an injury to her thigh. The patient contends that at this stage of the proceeding, before discovery is conducted and further information becomes available, the report of the neurologist provides sufficient expert testimony to support her allegations.

¶ 10 At the outset we note that, prior to 2006, 63 O.S. Supp.2003 § 1–1708[3] required

---

1. Report of Dr. Jablecki dated December 26, 2006, pages 13–15.

2. In *Qualls v. U.S. Elevator Corp.*, 1993 OK 135, ¶ 7, 863 P.2d 457 the Court defined *res ipsa loquitur* [as]:

> ... a pattern of proof which may be applied to an injury that does not occur in the usual course of everyday conduct unless a person who controls the instrumentality likely to produce injury fails to exercise due care to prevent its occurrence. With the aid of *res ipsa loquitur* negligence may be inferred from the harm without the aid of circumstances pointing to the responsible human cause. The fundamental element of this evidentiary process is the 'control of the instrumentality' which caused the damage. Whether a case is fit for the application of res ipsa loquitur presents a question of law; it is a judicial junction to determine if a certain set of circumstances permits a given inference ...

In *Sisson By and Through Allen v. Elkins*, 1990 OK 123, ¶¶ 6, 801 P.2d 722 we also explained that *res ipsa loquitur* is the Latin phrase meaning "the thing speaks for itself" and refers to a rule of evidence whereby in certain cases negligence of the defendant may be inferred from the mere fact that the accident happened.

3. Title 63 O.S. Supp.2003 § 1–1708E provides:

> A.1. In any medical liability action, except as provided in subsection B of this section, the plaintiff shall attach to the petition an affidavit attesting that:
> a. the plaintiff has consulted and reviewed the facts of the claim with a qualified expert,
> b. the plaintiff has obtained a written opinion from a qualified expert that clearly identifies the plaintiff and includes the expert's determination that, based upon a review of the available medical records, facts or other relevant material, a reasonable interpretation of the facts supports a finding that the acts or omissions of the health care provider against whom the action is brought constituted professional negligence, and
> c. on the basis of the qualified expert's review and consultation, the plaintiff has concluded that the claim is meritorious and based on good cause.
> 2. If a medical liability action is filed:
> a. without an affidavit being attached to the petition, as required in paragraph 1 of this subsection, and
> b. no extension of time is subsequently granted by the court, pursuant to subsection B of this section,

an affidavit be attached to the petition in order to file a medical negligence action attesting that a qualified expert had been consulted and issued an opinion sufficient to deem the claim meritorious. However, in *Zeier v. Zimmer*, 2006 OK 98, 152 P.3d 861, promulgated December 19, 2006, we held that this statute was unconstitutional because it: 1) was a special law prohibited by art. 5, § 46[4] of the Oklahoma Constitution; and 2) created an unconstitutional monetary barrier to the access to courts guaranteed by the Oklahoma Constitution art. 2, § 6.[5]

¶ 11 Here, the patient underwent surgery in January of 2006, but she did not file her lawsuit until July 9, 2007, after *Zeier*, supra, was decided. Two years later, the legislature repealed 63 O.S. Supp.2003 § 1–1708E and enacted 12 O.S. Supp.2009 § 19[6] which

---

the court shall, upon motion of the defendant, dismiss the action without prejudice to its refiling.

3. The written opinion from the qualified expert shall state the acts or omissions of the defendant(s) that the expert then believes constituted professional negligence and shall include reasons explaining why the acts or omissions constituted professional negligence. The written opinion from the qualified expert shall not be admissible at trial for any purpose nor shall any inquiry be permitted with regard to the written opinion for any purpose either in discovery or at trial.

B.1. The court may, upon application of the plaintiff for good cause shown, grant the plaintiff an extension of time, not exceeding ninety (90) days after the date the petition is filed, except for good cause shown, to file in the action an affidavit attesting that the plaintiff has obtained a written opinion from a qualified expert as described in paragraph 1 of subsection A of this section.

2. If on the expiration of an extension period described in paragraph 1 of this subsection, the plaintiff has failed to file in the action an affidavit as described above, the court shall, upon motion of the defendant, unless good cause is shown for such failure, dismiss the action without prejudice to its refiling.

C.1. Upon written request of any defendant in a medical liability action, the plaintiff shall, within ten (10) business days after receipt of such request, provide the defendant with:

a. a copy of the written opinion of a qualified expert mentioned in an affidavit filed pursuant to subsection A or B of this section, and

b. an authorization from the plaintiff in a form that complies with applicable state and federal laws, including the Health Insurance Portability and Accountability Act of 1996, for the release of any and all medical records related to the plaintiff for a period commencing five (5) years prior to the incident that is at issue in the medical liability action.

2. If the plaintiff fails to comply with paragraph 1 of this subsection, the court shall, upon motion of the defendant, unless good cause is shown for such failure, dismiss the action without prejudice to its refiling.

4. The Okla. Const. art. 5, § 46 provides in pertinent part:

The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing:

... Regulating the practice or jurisdiction of, or changing the rules of evidence in judicial proceedings or inquiry before the courts ...

5. The Okla. Const. art. 2, § 6 provides:

The courts of justice of the State shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay, or prejudice.

6. Title 12 O.S. Supp. § 19 provides:

A.1. In any civil action for professional negligence, except as provided in subsection B of this section, the plaintiff shall attach to the petition an affidavit attesting that:

a. the plaintiff has consulted and reviewed the facts of the claim with a qualified expert,

b. the plaintiff has obtained a written opinion from a qualified expert that clearly identifies the plaintiff and includes the determination of the expert that, based upon a review of the available material including, but not limited to, applicable medical records, facts or other relevant material, a reasonable interpretation of the facts supports a finding that the acts or omissions of the defendant against whom the action is brought constituted professional negligence, and

c. on the basis of the review and consultation of the qualified expert, the plaintiff has concluded that the claim is meritorious and based on good cause.

2. If the civil action for professional negligence is filed:

a. without an affidavit being attached to the petition, as required in paragraph 1 of this subsection, and

b. no extension of time is subsequently granted by the court, pursuant to subsection B of this section,

the court shall, upon motion of the defendant, dismiss the action without prejudice to its refiling.

3. The written opinion from the qualified expert shall state the acts or omissions of the defendant or defendants that the expert then believes constituted professional negligence and shall include reasons explaining why the acts or omissions constituted professional neg-

also attempts to require an affidavit in medical malpractice cases. Because no affidavit was required in the window in which the present cause arose, we need not address the Legislature's re-enactment of the affidavit requirement.

### a. Professional Medical Negligence

■ ¶ 12 Like all negligence claims, a *prima facie* case of medical negligence has three elements: 1) a duty owed by the defendant to protect the plaintiff from injury; 2) a failure to perform that duty; and 3) injuries to the plaintiff which are proximately caused by the defendant's failure to exercise the duty of care.[7]

■ ¶ 13 Here, the dispute centers around the causation element. The cause of a plaintiff's injury is a question of fact for the jury to decide.[8] Causation becomes a question of law only when there is no evidence and no reasonable inference from the evidence from which the jury could reasonably find a causal link between the negligent act and the injury.[9] The question is whether a reasonable person could believe that the defendant's negligent conduct was a cause of the plaintiff's injury.[10]

■ ¶ 14 In medical negligence cases, a physician's negligence is ordinarily established by expert medical testimony. However, when a physician's lack of care is so grossly apparent that laymen would have no difficulty recognizing it, expert testimony is not required to establish deficient care.[11] Here, the patient provided the opinion of an expert witness, a board-certified neurologist, to support her allegations.[12]

ligence. The written opinion from the qualified expert shall not be admissible at trial for any purpose nor shall any inquiry be permitted with regard to the written opinion for any purpose either in discovery or at trial.
B.1. The court may, upon application of the plaintiff for good cause shown, grant the plaintiff an extension of time, not exceeding ninety (90) days after the date the petition is filed, except for good cause shown, to file in the action an affidavit attesting that the plaintiff has obtained a written opinion from a qualified expert as described in paragraph 1 of subsection A of this section.
2. If on the expiration of an extension period described in paragraph 1 of this subsection, the plaintiff has failed to file in the action an affidavit as described above, the court shall, upon motion of the defendant, unless good cause is shown for such failure, dismiss the action without prejudice to its refiling. If good cause is shown, the resulting extension shall in no event exceed sixty (60) days.
C.1. Upon written request of any defendant in a civil action for professional negligence, the plaintiff shall, within ten (10) business days after receipt of such request, provide the defendant with:
a. a copy of the written opinion of a qualified expert mentioned in an affidavit filed pursuant to subsection A or B of this section, and
b. an authorization from the plaintiff in a form that complies with applicable state and federal laws, including the Health Insurance Portability and Accountability Act of 1996, for the release of any and all medical records related to the plaintiff for a period commencing five (5) years prior to the incident that is at issue in the civil action for professional negligence.
2. If the plaintiff fails to comply with paragraph 1 of this subsection, the court shall, upon motion of the defendant, unless good cause is shown for such failure, dismiss the action without prejudice to its refiling.
D. A plaintiff in a civil action for professional negligence may claim an exemption to the provisions of this section based on indigency pursuant to the qualification rules established as set forth in Section 4 of this act.

**7.** *Robinson v. Oklahoma Nephrology Associates,* 2007 OK 2, ¶ 9, 154 P.3d 1250; *Thompson v. Presbyterian Hosp., Inc.,* 1982 OK 87, ¶ 7, 652 P.2d 260.

**8.** *Robinson v. Oklahoma Nephrology Associates,* see note 7, supra; *Johnson v. Hillcrest Health Ctr., Inc.,* 2003 OK 16, ¶ 18, n. 25, 70 P.3d 811.

**9.** *Robinson v. Oklahoma Nephrology Associates,* see note 7, supra; *Johnson v. Hillcrest Health Ctr., Inc.,* see note 8, supra.

**10.** *Robinson v. Oklahoma Nephrology Associates,* see note 7, supra; *McKellips v. St. Francis Hosp., Inc.,* 1987 OK 69, ¶ 10, 741 P.2d 467.

**11.** *Harder v. F.C. Clinton, Inc.,* 1997 OK 137, ¶ 14, n. 30, 948 P.2d 298; *Turney v. Anspaugh,* 1978 OK 101, ¶ 21, 581 P.2d 1301; *Boxberger v. Martin,* 1976 OK 78, ¶ 14, 552 P.2d 370.

**12.** The only expert opinion offered by the surgeon is his own opinion that nerve damage could not have occurred. He insists that because the neurologist is not an orthopedic surgeon, he is not a qualified expert to evaluate any damage that could have occurred during orthopedic surgery. We find this argument unconvincing. Under this rationale, the surgeon would not qualify as an expert concerning any potential neurological injury because he is not a neurologist.

¶ 15 The neurologist noted that prior to the surgery there was nothing wrong with the movement or nerves in the patient's thigh but after the surgery there was femoral nerve damage.[13] He stated that it is "more probable than not" that the injury developed during the surgical procedure and except for the complication of the surgery she would not have developed a left femoral neuropathy.[14] Nevertheless, he also noted that he would require additional information before the cause can be determined with certainty.[15]

¶ 16 In *Robinson v. Oklahoma Nephrology Associates, Inc.*, 2007 OK 2, ¶ 11, 154 P.3d 1250, we explained that:

... Our case law requiring a medical malpractice plaintiff to produce evidence that injuries were caused by a particular physician's negligence has never required the production of experts who will utter a particular magic phrase, but focused instead on the particulars of each case. While the plaintiff must present evidence to remove the cause of her injuries from the realm of guesswork, she need not establish causation to a specifically high level of probability merely to withstand a demurrer to the evidence ... **Absolute certainty is not required.**[16] (Citations omitted.) (emphasis supplied.)

¶ 17 This explanation regarding medical evidence is consistent with a long history of cases in which causation as presented by a medical professional was discussed. For example, in *Cohenour v. Smart*, 1951 OK 339, ¶ 7, 240 P.2d 91, the physician testifying for the plaintiff in a negligence action stated that the accident could have caused the injury, not "probably" caused the injury. The *Cohenour* Court, determining that corroborating evidence was lacking, noted:

... [I]t is incumbent upon the plaintiff, under the facts of this case, to prove not only that the accident could have caused the injury, but that it probably did ... [T]he authorities clearly hold that medical testimony as to the possibility of a causal relation between a given accident or injury and the subsequent impaired physical condition of the person injured is not sufficient, standing alone, to establish such a relation. 'Testimony as to possibility' is said to mean testimony in which the witness asserts that the accident or injury 'may have' or 'could have' caused, or 'possibly did' cause the subsequent physical condition, or that a given physical condition 'might have,' 'may have,' 'could have,' or 'possibly did' result from a previous accident or injury—testimony, that is, which is confined to words indicating the probability or likelihood of its existence.[17]

¶ 18 In *Oklahoma Natural Gas Co. v. Kelly*, 1944 OK 283, ¶¶ 8–10, 153 P.2d 1010, a case in which two chiropractors testified as expert witnesses as to the cause of an injury in an automobile accident, but two medical

---

**13.** The independent medical evaluation of Dr. Charles Jablecki dated December 26, 2006, at page 1 provides in pertinent part:

... She said that she continued to be active in her work as a police officer, including working in a gym doing presses. She had no difficulty with these except for the 'popping' in the knee and the occasional swelling with activities.
At page 2–3, the report continues:
... after the surgery, she had problems with the control of the left low extremity. She was in physical therapy and the therapist could not understand why the left thigh muscle did not move when the therapist applied electrical stimulation. She was unable to extend the left leg voluntarily ... [H]er therapist recommended that she have a neurological review and she saw Dr. Bouvette ...
At page 12, the evaluation provides:
... Limited EMG studies of the left lower extremity ... The studies were limited because of the discomfort of the procedure. The studies were ABNORMAL. The findings were compatible with left femoral nerve pathology ... I defer to an orthopedist regarding causation, impairment, rehabilitation, future medical care and apportionment for her left current knee joint pathology ...

**14.** The independent medical evaluation of Dr. Charles Jablecki dated December 26, 2006 at pages 14–16.

**15.** The independent medical evaluation of Dr. Charles Jablecki dated December 26, 2006 at pages 14–16.

**16.** *Robinson v. Oklahoma Nephrology Associates, Inc.*, see note 7, supra at ¶ 11.

**17.** *Cohenour v. Smart*, 1951 OK 339, ¶ 7, 240 P.2d 91.

doctors testified to the contrary, the Court said:

> ... While there is authority to the contrary, we are committed to the rule that opinion evidence, such as that given by the plaintiff's expert witnesses, that a certain cause 'might', 'could' or 'possibly' did or would bring about a certain result is competent and may have some probative value ... The value of such evidence is ordinarily for the trier of the facts. But where such evidence is not corroborated or supplemented by other evidence, and where the fact necessary to be established must be proved by testimony of a qualified expert, such evidence, standing alone, is generally held to be insufficient to make out a prima facie case....

On the question of whether the accident 'could' cause the curvature of the spine, there was a disagreement between the chiropractors testifying for the plaintiff and the medical doctors testifying for the defendant, but it was for the jury to resolve the conflict and to give such weight to the testimony of each of the expert witnesses as it deemed proper....

We are of the opinion, and hold, that the evidence was sufficient to submit to the jury the question of whether the injuries complained of by the plaintiff, including the curvature of the spine, were caused by the accident. True, as above stated, the testimony of plaintiff's expert witnesses that said injuries 'could' have been caused by the accident, standing alone, would not have been sufficient to submit to the jury the question of whether the curvature of the spine and the discomfort and injuries springing therefrom were caused by the accident, as the answer thereto would have been based upon conjecture and speculation, since it was shown that the curvature of the spine could have been brought about by several different causes. But proof of the cause and effect of the injuries in such a case need not rest entirely upon expert testimony. And when the expert testimony that the curvature of the spine 'could' have been caused by the accident is considered along with the testimony that there was no curvature of the spine before, but was shortly after, the accident, and there is no factual evidence tending to prove any other cause, and the plaintiff's evidence reasonably tended to exclude every other possible cause, the jury could reasonably find that it was more probable that the curvature of plaintiff's spine and the ailments resulting therefrom were caused by the accident than by any other cause, and such a finding cannot be said to be based upon speculation and conjecture.[18] (citations omitted.)

¶ 19 A motion for summary judgment should be sustained only when the pleadings, affidavits, depositions, admissions, or other evidentiary materials establish that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.[19] All conclusions drawn from the evidentiary material submitted to the trial court are viewed in the light most favorable to the party opposing the motion.[20] Even when basic facts are undisputed, motions for summary judgment should be denied, if under the evidence, reasonable persons might reach different conclusions from the undisputed facts.[21]

¶ 20 The determination of causation may be removed from the province of the fact-finder only when there is a complete lack of evidence and no reasonable inference tending to link the defendant's negligence to the plaintiff's harm.[22] Here, there is not an ab-

---

18. *See, Glen L. Wigton Motor Co., v. Phillips,* 1933 OK 252, ¶ 0, 21 P.2d 751.

19. *Johnson v. Hillcrest Health Center, Inc.,* see note 8 supra at ¶ 16; *K & K Food Services, Inc. v. S & H., Inc.,* 2000 OK 31, ¶ 16, 3 P.3d 705; *Skinner v. Braum's Ice Cream Store,* 1995 OK 11, ¶ 9, 890 P.2d 922.

20. *Johnson v. Hillcrest Health Center, Inc.,* see note 8 supra at ¶ 16; *Phelps v. Hotel Management, Inc.,* 1996 OK 114, ¶ 7, 925 P.2d 891; *State*

ex rel. Hettel v. Security National Bank & Trust Co., in Duncan, 1996 OK 53, ¶ 24, 922 P.2d 600.

21. *Jones v. Mercy Health Center, Inc.,* 2006 OK 83, ¶ 24, 155 P.3d 9; *Johnson v. Hillcrest Health Center, Inc.,* see note 8 supra at ¶ 16; *Prichard v. City of Oklahoma City,* 1999 OK 5, ¶ 19, 975 P.2d 914; *Kraszewski v. Baptist Medical Center of Oklahoma,* 1996 OK 141, ¶ 6, 916 P.2d 241.

22. *Harder v. F.C. Clinton, Inc.,* 1997 OK 137, ¶ 6, 948 P.2d 298 explains that:

sence of proof that the surgeon's treatment proximately caused the patient's injuries. Rather, the neurologist's conclusions are probative and supported by corroborating evidence that nothing was wrong with her thigh before the surgery. After the surgery she suffered from nerve damage and atrophy and nothing else indicated that such nerve damage was caused by any other event. Consequently, the expert testimony may be used to support the claim of negligence under the teachings of our previous decisions. The patient has presented competent and sufficient evidence to make a *prima facie* case that she was injured during knee surgery and that the surgeon caused the injury. In other words, a reasonable person could conclude that an injury was sustained during the surgery and that surgeon was the cause of the injury. Accordingly, the trial court erred in granting the motion for summary judgment on the claim of negligence.

### b. *Res ipsa loquitur.*

 ¶ 21 *Res ipsa loquitur* is statutorily codified in 76 O.S.2001 § 21.[23] The purpose of the *res ipsa loquitur* evidentiary rule is to aid the plaintiff in making out a *prima facie* case of negligence in circumstances when direct proof of why the harm happened is

> The legal standard that governs motions for directed verdict and those for summary judgment is very similar, if not indeed identical. Neither may be sustained unless there is an entire absence of proof on a material issue. Both should be denied when there are questions of material fact or reasonable persons could differ as to the choice of inferences to be drawn from the facts in evidence. In determining whether a plaintiff's evidence is sufficient to withstand a motion for directed verdict, the trial court must consider as true all evidence favorable to the plaintiff together with all reasonable inferences to be drawn from it, and disregard all conflicting evidence favorable to the movant. Only if all the inferences to be drawn from the evidence are in favor of the moving party will a directed verdict withstand appellate scrutiny.

**23.** Title 76 O.S.2001 § 21 provides:
In any action arising from negligence in the rendering of medical care, a presumption of negligence shall arise if the following foundation facts are first established:
1. The plaintiff sustained any injury;
2. Said injury was proximately caused by an instrumentality solely within the control of the defendant or defendants; and

beyond the power or knowledge of the plaintiff.[24] Under § 21, negligence is presumed to have occurred when the plaintiff establishes an injury which was proximately caused by an instrumentality solely within the control of the defendant and would not have occurred absent negligence on the part of the defendant.[25]

██ ¶ 22 To establish a *prima facie* case for *res ipsa* application, the patient was required to show that: 1) an injury to the thigh muscle/nerves does not usually occur during the course of a knee surgery; 2) the surgeon had exclusive control and management of the instrumentality that caused the injury: 3) evidence shedding light on the harmful event is more accessible to the surgeon than the patient; and 4) the injurious event is the sort of occurrence which, in the ordinary course of events, would not have happened if one having control of the instrumentality exercised due care.[26]

¶ 23 While 76 O.S.2001 § 21 [27] may, at the discretion of the trial court, require expert testimony when it is determined that a degree of knowledge or skill not possessed by the average person is necessary, we recently noted that professional proof may be unnecessary under the theory of *res ipsa loquitur.*

> 3. Such injury does not ordinarily occur under the circumstances absent negligence on the part of the defendant.
> If any such fact, in the discretion of the court, requires a degree of knowledge or skill not possessed by the average person, then in that event such fact must be established by expert testimony.

**24.** *Harder v. F.C. Clinton, Inc.,* see note 22, supra at ¶ 1; *Turney v. Anspaugh,* see note 11, supra; *St. John's Hospital & School of Nursing, Inc., v. Chapman,* 1967 OK 126, ¶ 0, 434 P.2d 160.

**25.** Title 76 O.S.2001 § 21, see note 23, supra. *See also, Sisson By and Through Allen v. Elkins,* note 2, supra at ¶¶ 6–7, in which we discussed the differences in the common law's inference of negligence and § 21's presumption of negligence when the elements for *res ipsa loquitur* are met.

**26.** *See, Harder v. F.C. Clinton, Inc.,* note 22, supra at ¶ 13.

**27.** Title 76 O.S.2001 § 21, see note 23, supra.

In *Zeier v. Zimmer*, 2006 OK 98, 152 P.3d 861, we addressed the constitutionality of a statutory requirement that an affidavit be attached to the petition in a medical negligence action. The Court, in striking the statute as unconstitutional, stated that the nature of a *res ipsa loquitur* claim may negate the necessity of expert testimony to prove the cause.[28]

¶ 24 It is obvious that the control of the evidence as to what actually happened in the surgery lies with the surgeon. A patient placed under anesthesia preparatory to surgery relinquishes to the attending physician, and to those who assist in the procedure all control over his/her body.[29] There is no question that the surgeon is the person in charge of the procedure, the room, the patient, and those who assisted him. Nor is it disputed that an injury to the thigh muscle/nerves does not ordinarily occur during a knee surgery without something having gone wrong. In fact, the surgeon insists that it was not possible.

¶ 25 The record reflects that between the patient's account and the expert's evaluation, there is a disputed fact question as to what "instrumentality" could have caused the injury. According to the neurologist, it could have been: 1) a mistake in administering a nerve block and lateral release /or not administering such a block/release; or 2) a compression injury due to the restraints used to hold the knee in place or a tourniquet used during surgery; or 3) a combination of these.

¶ 26 The disputed evidentiary materials collectively show that: 1) with the exception of the knee condition, the patient was in general good health before the surgery; 2) the patient was sedated during the surgery; 3) the patient's left thigh was normal before going into the knee surgery; 4) the patient was informed that something went wrong during the surgery; 5) the thigh injury could have been cause by compression during the surgery or a nerve block or lack thereof; 6) an injury to the thigh does not normally result from a proper knee surgery; and 7) after the surgery the thigh muscle suffered limited motion and atrophy.

¶ 27 The evidentiary materials coupled with the expert testimony, presents questions of fact from which a reasonable persons might reach different conclusions. As we recently explained in *Deweese v. Patterson UTI Drilling Co.*, 2010 OK 10, ¶ 19, 229 P.3d 540, quoting *Harder v. F.C. Clinton, Inc.*, 1997 OK 137, 948 P.2d 298, and *Qualls v. U.S. Elevator Corp.*, 1993 OK 135, 863 P.2d 457:

> The effect of the *res ipsa loquitur* evidentiary rule is merely to raise a rebuttable inference which allows a plaintiff to take the case to the jury and thus avoid a directed verdict for the defendant. Where the *proof is conflicting or subject to different inferences*, some of which are in favor of and others against the applicability of *res ipsa loquitur*, the question must be left to the jury. (Citations omitted, emphasis in original.)

The trial court prematurely granted summary judgment on this issue as well.

## CONCLUSION

¶ 28 A motion for summary judgment should be sustained only when the pleadings, affidavits, depositions, admissions, or other evidentiary materials establish that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.[30] All conclusions drawn from the evidentiary material submitted to the trial court are viewed in the light most favorable to the party opposing the motion.[31] Even when basic facts are undis-

---

28. *Zeier v. Zimmer, Inc.*, 2006 OK 98, ¶ 16, 152 P.3d 861. Title 76 O.S.2001 § 21, see note 23, supra; *Harder v. F.C. Clinton, Inc.* see note 22, supra at ¶ 14; *Boxberger v. Martin*, 1976 OK 78, ¶ 14, 552 P.2d 370. *See also, Orthopedic Clinic v. Hanson*, 1966 OK 119, 415 P.2d 991 [Expert medical testimony not required to establish cause of an objective injury.].

29. *Jackson v. Oklahoma Memorial Hospital*, 1995 OK 112, ¶ 13, 909 P.2d 765.

30. *Johnson v. Hillcrest Health Center, Inc.*, see note 8 supra at ¶ 16; *K & K Food Services, Inc. v. S & H, Inc.*, see note 19, *Skinner v. Braum's Ice Cream Store*, see note 19, supra.

31. *Johnson v. Hillcrest Health Center, Inc.*, see note 8 supra at ¶ 16; *Phelps v. Hotel Manage-*

puted, motions for summary judgment should be denied, if under the evidence, reasonable persons might reach different conclusions from the undisputed facts.[32] Summary judgment was premature because the patient presented sufficient evidentiary material to make a *prima facie case* that: 1) her knee surgery was caused by the surgeon's negligence; and 2) the *res ipsa loquitur* evidentiary rule may be applicable.

**CERTIORARI PREVIOUSLY GRANTED; COURT OF CIVIL APPEALS OPINION VACATED; TRIAL COURT REVERSED AND REMANDED.**

COLBERT, V.C.J., KAUGER, WATT, EDMONDSON, REIF, COMBS, GURICH, JJ. concur.

TAYLOR, C.J., WINCHESTER, J. dissent.

*ment, Inc.,* see note 20, supra; *State ex rel. Hettel v. Security National Bank & Trust Co., in Duncan,* see note 20, supra.

**32.** *Jones v. Mercy Health Center, Inc.,* see note 21, supra; *Johnson v. Hillcrest Health Center, Inc.,* see note 8, supra at ¶ 16; *Prichard v. City of Oklahoma City,* see note 21, supra; *Kraszewski v. Baptist Medical Center of Oklahoma,* see note 21, supra.