2013 OK 65

Tracy R. SMITH, Appellant/Plaintiff,

v.

Robert F. HINES, M.D., Robert F. Hines, M.D., Inc., Oklahoma Sports Science & Orthopedics, PLLC, St. Anthony North Ambulatory Surgical Center, LLC, Philip A. Isaac, M.D., and Phillip Isaac, M.D. FRCA, Inc., Appellees/Defendants.

No. 111,551.

Supreme Court of Oklahoma.

July 2, 2013.

## MEMORANDUM OPINION

WATT, J.:

¶1 Before considering the merits of this cause, we address two preliminary matters. The first is Hines' assertion that the plaintiff's expert was not qualified, as a neurologist, to evaluate any damage that could have occurred during orthopedic surgery. We found that argument unconvincing in *Smith v. Hines*, 2011 OK 51 (*Smith I*), fn. 12, 261 P.3d 1129, and we do so here as well.[1]

¶2 The second is Hines' motion to strike certain documents included in appellant's record on accelerated appeal. The motion to strike is aimed at documents which were a part of the record in *Smith I*, and which, arguably, were not considered by the trial court in sustaining the instant motion for summary judgment. There is no question that Rule 1.36(c)(A), Supreme Court Rules, 12 O.S.2011, Ch. 15, App. 1, limits materials which may be considered in appeals of summary judgment.[2] Nevertheless, this Court

1. *Smith v. Hines*, 2011 OK 51 (*Smith I*), fn. 12, 261 P.3d 1129. Footnote 12 provides:

"The only expert opinion offered by the surgeon is his own opinion that nerve damage could not have occurred. He insists that because the neurologist is not an orthopedic surgeon, he is not a qualified expert to evaluate any damage that could have occurred during orthopedic surgery. We find this argument unconvincing. Under this rationale, the surgeon would not qualify as an expert concerning any potential neurological injury because he is not a neurologist."

2. Rule 1.36(c)(A), Supreme Court Rules, 12 O.S. 2011, Ch. 15, App. 1 providing:

"(c) **Record on Appeal.** The record on appeal will stand limited to:
(A) In appeals from summary judgment:
(1) the memorialized order by which summary judgment is entered;

(2) pleadings proper as defined by 12 O.S.1991 § 2007(A), (petition, answer, etc.);
(3) applicable instruments on file, including the motion and response with supporting briefs and attached materials filed by the parties as required by District Court Rules 13(a) and 13(b);
(4) any other item on file which, according to some recitation in the trial court's journal entry or in some other order, was considered in the decisional process;
(5) any other order dismissing some but not all parties or claims;
(6) any transcripts of proceedings on the motion(s);
(7) any motions, along with supporting and responsive briefs, for new trial (re-examination) of the summary judgment process;
(8) the appearance docket; and
(9) a cover page and Index [sic] of the record prepared by the party."

may take judicial notice of its own records in litigation interconnected with an appeal before it.[3] While acknowledging that the documents sought to be struck played little or no part in today's ruling, we deny the motion to strike.

¶3 In *Smith I*, supra, we determined that the patient presented competent and sufficient evidence to avoid a motion for summary judgment. We held that:

[s]ummary judgment was premature because the patient presented sufficient evidentiary material to make a *prima facie* case that: 1) her knee surgery was caused by the surgeon's negligence; and 2) the *res ipsa loquitur* evidentiary rule might apply.

In this second appeal (*Smith II* ), the dispositive issue presented is again whether the plaintiff/appellant, Tracy R. Smith (Smith/patient), presented evidence sufficient to avoid the appellees/defendants', Robert F. Hines, M.D. (Hines/ surgeon), motion for summary judgment. We hold that she did and reverse and remand the cause.

¶4 It is unnecessary to regurgitate the underlying facts of this medical malpractice case as those are aptly presented in *Smith I*, supra. The facts which are pertinent to this cause arise from the surgeon's second motion for summary judgment which the trial court sustained on February 4, 2013. In that motion, Hines represented to the trial court that:

[P]laintiff's femoral nerve injury was idiopathic. In other words, Plaintiff's femoral nerve injury was not caused by the negligence of anyone and occurred outside of surgery. Therefore, there is an entire absence of proof on a material issue that the Plaintiff must prove to support her claim of *res ipsa loquitur*.

Dr. Jablecki agreed that if no femoral nerve block were given, he did not have an explanation for Plaintiff's femoral nerve injury. Further, Dr. Jablecki agreed that plaintiff could have developed femoral neu-

ropathy for an unknown reason, unrelated to surgery.[4]

Nevertheless, the surgeon did concede that "Dr. Jablecki was unwilling to concede that Plaintiff's injury did not occur during surgery."[5]

¶5 Originally, the neurologist considered three things that could have occurred in surgery which may have caused the patient's injury: 1) a compression injury at the level of the nerve; 2) an injection injury related to the nerve block procedure; or 3) a compression injury of the femoral nerve at the groin level. Jablecki testified in his deposition taken on November 1, 2012 that, if facts as described were accurate, he did not believe that either the first or second of his theories were viable. Nevertheless, while the neurologist clearly continued to believe that the femoral nerve block was the most likely culprit if it were performed, he did not rule out the third cause as a potential cause of Smith's injury. Rather, he indicated that the femoral nerve injury could have occurred as a result of a strap restraint. Dr. Jablecki testified in his deposition of November 1, 2012, in pertinent part at p. 82:

Q. ... And as for the third item, you identify compression injury of the femoral nerve at level of the groin due to flexion of the hip or external compression of the nerve due to a restraint, and, again, you shorthand that as a compression injury.

A. That's based on my understanding of where—the position of the leg.

Now, there was one other potential source of that. There was a strap, I believe, around the hips to help restrain the patient on the operating table. I have not heard or seen of a compression injury from placement of a strap like that, so that would go below the injection injury as a possibility. So I can't say for sure it wasn't a compression injury. I don't know where the strap was or the tension on it. But that's a possibility. If there were overwhelming evidence that the injection injury was not

**3.** *House of Realty, Inc. v. City of Midwest City,* 2004 OK 97, fn. 1, 109 P.3d 314; *Matter of C.A.D.,* 1992 OK 89, fn. 10, 839 P.2d 165.

**4.** Motion for Summary Judgment of Defendants, filed December 3, 2012, at p. 13.

**5.** *Id.* at p. 16.

an explanation, then I would say that's another possibility...."

¶ 6 We made it clear in *Smith I* that testimony indicating that an injury could have been "caused" by an instrumentality or action of a third party was sufficient to avoid a motion for summary judgment. We also stated in ¶ 20 of the opinion that where there was not an absence of proof that the surgeon's treatment proximately caused the patient's injuries, the issue of causation should not be removed from the province of the factfinder.

¶ 7 We deny the motion to strike. We express no opinion on the strength of the evidence presented in opposition to summary judgment nor on the outcome of this cause. Nevertheless, we reverse and remand this matter to the trial court for further proceedings as appropriate under this Memorandum Opinion.

COLBERT, C.J., REIF, V.C.J., KAUGER, WATT, EDMONDSON, COMBS, GURICH, JJ., concur.

WINCHESTER, TAYLOR, JJ., dissent.