OSCN Found Document:FARGO v. HAYS-KUEHN

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 FARGO v. HAYS-KUEHN
2015 OK 56
Case Number: 111416
Decided: 06/30/2015
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2015 OK 56, __ P.3d __

 

MISTY DAWN FARGO and THE ESTATE OF JASON PATTERSON by and through MOTHER and PERSONAL REPRESENTATIVE NORMA PATTERSON, Plaintiffs/Appellants,
v.
TERESA HAYS-KUEHN,[1] Defendant/Appellee,
and
ANGELINE SANKEY and GINGER MERRILL, Defendants.

CERTIORARI TO THE COURT OF CIVIL APPEALS,
DIVISION IV

¶0 Jason Patterson (Patterson), the driver of a motorcycle died at the scene, and his passenger, plaintiff/appellant, Misty Dawn Fargo (Fargo), sustained severe injuries when the motorcycle collided head on with a vehicle that entered their lane of traffic. Fargo and plaintiff/appellant, the Estate of Jason Patterson, by and through Mother and Personal Representative Norma Patterson, sued defendant/appellee,Teresa Hays-Kuehn (Kuehn) and two other defendants [2] for negligence in failing to safely operate their respective vehicles. Kuehn, whose vehicle did not collide with the motorcycle, moved for summary judgment asserting that even if her actions were negligent, at most they created a condition and were not the proximate cause of plaintiffs' damages thereby relieving her of liability. The trial court sustained the motion and plaintiffs appealed. The Court of Civil Appeals affirmed finding Kuehn's actions were not the proximate cause of Plaintiffs' injuries and damages. We hold that whether Kuehn's actions were the proximate cause of the accident or merely a "condition" is a question for the trier of fact making summary adjudication inappropriate.

CERTIORARI PREVIOUSLY GRANTED;
COURT OF CIVIL APPEALS' OPINION VACATED;
DISTRICT COURT'S JUDGMENT REVERSED;
AND MATTER REMANDED FOR FURTHER PROCEEDINGS

Charles Gregory Smart, Tye H. Smith, CARR & CARR, for Plaintiff/Appellant, Misty Dawn Fargo,
Charles F. Alden, III, Mitzy G. Fryer, for Plaintiff/Appellant, Estate of Jason Patterson, by and through mother and Personal Representative, Norma Patterson,
Micheal L. Darrah, Hilary S. Allen, Durbin, Larimore & Bialick, for Defendant/Appellee, Teresa Hayes-Kuehn

WATT, J.:

¶1 We granted certiorari in this matter to determine if facts relevant to the question of primary negligence are in dispute or whether uncontroverted facts result in conflicting inferences. We have carefully reviewed the merits of the summary judgment record in light of the heavy burden imposed on the moving party in a negligence action. Before a court may grant this definitive relief, it must clearly appear that the movant is entitled to judgment as a matter of law, viewing the proffered material in the light most favorable to the opposing party. [3] Summary judgment is unwarranted where, as in this matter, relevant facts are in dispute or where reasonable persons exercising fair and impartial judgment could differ. [4]

¶2 Drivers of motor vehicles have a duty to exercise due care in the operation of their vehicle. [5] Ginger Merrill ("Merrill"), whom plaintiffs dismissed from this suit, drove the only vehicle that collided with the motorcycle. Although Kuehn had no direct contact with Patterson or Fargo, whether she operated her vehicle with due care when she abruptly swerved into the motorcycle's lane without a signal knowing Merrill was directly behind, is a question to be resolved by the fact finder . [6] The Oklahoma Highway Patrol ("OHP") Investigator determined the collision was created by Kuehn's inattention and failure to stop. However, the record contains disputed key facts and differing expert opinions. This case requires a factual inquiry of the conflicting evidence which leads to the formation of different inferences. Because more than one conclusion can be reached, this matter must be resolved by a jury. Upon de novo review, we hold the trial court erred in granting summary judgment and reverse.

FACTUAL AND PROCEDURAL HISTORY

¶3 On July 25, 2008, Jason Patterson died at the scene when the southbound motorcycle he was driving at highway speed impaled onto the front driver side windshield of Merrill's northbound vehicle after it crossed into Patterson's lane of traffic. Plaintiff, Fargo, a passenger on the motorcycle, was thrown from the motorcycle, receiving multiple injuries. Plaintiffs initially filed this action against Kuehn, Merrill and Angeline Sankey ("Sankey") for negligence in the operation of their respective vehicles, but later filed a dismissal without prejudice against Merrill and Sankey. Kuehn is the only remaining defendant in this matter.

¶4 The three defendants were all separately traveling northbound in succession at highway speeds, on a rural two lane highway. Vehicle 1 was driven by Sankey who slowed and then stopped at an intersection waiting for oncoming traffic to clear, including the motorcycle, before making a left turn. Kuehn, the driver of vehicle 2, a "larger" truck, did not slow down or stop behind Sankey. Instead, Kuehn continued at highway speed and passed Sankey on the left, crossing the centerline into the oncoming traffic lane. Both Sankey and her passenger describe Kuehn as "flying by" their truck and coming so close that they thought Kuehn was going to hit and take off their driver's side rear view mirror.

¶5 Merrill, in vehicle 3, was also driving at highway speed directly behind Kuehn. While Kuehn's larger truck remained in front of Merrill, blocking her view, Merrill was unable to see Sankey and thus, did not realize she was swiftly approaching a stopped vehicle. Without slowing or using a turn signal, Kuehn abruptly swerved left, at which time Merrill's view opened and she saw Sankey's stationary smaller truck. Attempting to avoid a collision, Merrill followed Kuehn into the oncoming lane to avoid hitting Sankey. Merrill could not see the rapidly approaching motorcycle, because Kuehn's "larger" truck blocked her view. When Kuehn swerved back into the northbound lane, Merrill became aware of the impending motorcycle and her efforts at evasive action failed. Merrill attempted to swerve back into her lane of traffic to avoid the motorcycle, but instead hit Sankey's left rear panel and then the motorcycle.

¶6 When interviewed by OHP, Merrill described Sankey's vehicle as a "smaller truck" and that Kuehn was driving a "large truck". Merrill told OHP and testified in her deposition that she saw Sankey's truck as they drove out of town, but did not see it again until right before the accident because it was hidden by Kuehn's larger truck. Merrill is certain that Kuehn did not brake or signal immediately before making a sudden swerve into the oncoming traffic lane to pass Sankey. A span of seconds passed from the time that Kuehn entered the oncoming traffic lane to pass Sankey and the collision between the motorcycle and Merrill.

¶7 Three days after the accident, Kuehn explained to OHP she initially realized that Sankey was slowing, but as she got closer, she saw Sankey was stopped. Kuehn explained to OHP that if she had observed brake lights she would have stopped and that if she had seen a left turn signal, she would not have passed Sankey. However, she explained to OHP that she is not completely certain she did not see brake or turn signal lights on Sankey's truck. Kuehn said she passed Sankey because she did not know what Sankey was doing sitting in the middle of the north bound lane.

¶8 Seconds after passing Sankey, Kuehn heard a loud boom, then pulled over and stopped. When she saw a collision had occurred, she backed her vehicle to the accident scene. Kuehn then walked over to Merrill sitting in her wrecked vehicle and apologized, stating Sankey had slammed on her brakes. Three years later in a deposition, Kuehn testified that she never saw the Sankey vehicle stop at the intersection and that Sankey's truck was actually moving when she passed it.

¶9 OHP collected data from Merrill's air bag module and the bulbs from the rear lights of the Sankey vehicle. Their analysis showed Merrill's brakes were activated prior to impact, with decelerating speeds ranging from 65 mph at five seconds prior to impact to 45 mph at one second prior to impact. OHP also determined from the physical evidence and testing that Sankey's left turn signal was activated at the time her vehicle was hit from behind.

¶10 OHP concluded the collision was created by the inattention and failure of Kuehn to reduce her speed for Sankey, and that Merrill was following too close behind Kuehn, not allowing enough distance to react to hazards in front of her. Even though Kuehn's vehicle did not physically collide with Sankey or with the motorcycle, OHP determined that Kuehn's actions were a direct cause of the accident. OHP recommended that charges of operating a motor vehicle at a speed greater than reasonable or proper for the conditions be filed against both Kuehn and Merrill.

SUMMARY JUDGMENT STANDARD

¶11 An order granting summary judgment in favor of Kuehn was filed on December 20, 2012. Plaintiffs appealed and the Court of Civil Appeals affirmed, finding at most (1) Kuehn's actions were a "condition", (2) it was not foreseeable that Merrill, who was following directly behind Kuehn, would follow into the oncoming traffic lane and hit the motorcycle injuring Patterson and Plaintiff Fargo and (3) that Kuehn's actions were not the proximate cause of Plaintiffs' injuries and damages. Plaintiffs appealed, urging the resolution of proximate cause was a question of fact for a jury to decide. We granted certiorari on February 3, 2015.

¶12 Summary judgments are disfavored and should only be granted when it is clear there are no disputed material fact issues. [7] This Court has consistently held that summary judgment should be denied where there are controverted material facts or if reasonable minds could reach different conclusions from the undisputed material facts. [8] The facts and inferences therefrom must be viewed in the light most favorable to the non moving party. [9] Thus all inferences must be viewed most favorably to plaintiffs in this matter. 

DISCUSSION OF NEGLIGENCE AND PROXIMATE CAUSE 
INVOLVING MULTI VEHICLE TORT ACTIONS

¶13 The three necessary elements to a finding of negligence are (1) a duty owed by the defendant to protect plaintiff from injury (2) failure to fulfill that duty and (3) injuries to plaintiff proximately caused by defendant's failure to meet the duty.[10] In applying these principles to automobile negligence cases, we have long recognized that drivers have a duty to operate their vehicle with due care. [11] To fulfill this duty, a driver must do what a prudent person would do under the circumstances of each particular case. [12] Whether Kuehn's actions meet the standards of due care, is exclusively a question for the jury unless under the facts, reasonable minds could not differ. [13] Likewise, negligence is not actionable unless it is the proximate cause of the harm for which plaintiff seeks recovery. [14] Proximate cause is always a question for the jury unless there is no evidence from which a jury could reasonably find a causal connection. [15]

¶14 We first address Kuehn's duty to drive her vehicle with due care. Although a number of important facts are undisputed, the reasonableness of Kuehn's actions must be viewed in light of steps taken by Sankey in stopping to make a left hand turn. It is undisputed that at the time Kuehn decided to cross into the oncoming traffic lane to pass Sankey, (1) Kuehn was aware that Sankey was stopped or stopping; (2) Merrill did not know that Sankey was stopped or stopping as her view was blocked by Kuehn's larger vehicle; (3) Kuehn did not reduce her speed of 60 mph, brake or signal before crossing into the south lane to pass Sankey; (4) Merrill was directly behind Kuehn; (5) Merrill did not see Sankey's stopped vehicle until Kuehn passed Sankey; (6) Kuehn was aware of the approaching motorcycle; (7) Merrill's view of the motorcycle was blocked by Kuehn's larger vehicle; (8) Seconds after Kuehn passed Sankey's vehicle, Merrill collided with the motorcycle; (9) Kuehn successfully passed Sankey.

¶15 Whether Kuehn acted reasonably cannot be answered without considering the actions of Sankey. There is disputed evidence and testimony surrounding (1) whether Sankey was stopped or stopping, (2) use of her brakes, (3) use of left turn signal and (4) whether Sankey slammed on her brakes. In addition, we have consistently recognized that the size of the lead vehicle when it blocks the view of the following vehicle is a factor to weigh when determining whether the actions of a driver like Kuehn were reasonable under the circumstances. [16] Generally speaking, whether the lead vehicle breaches this duty by suddenly swerving, as Kuehn did, is a question for the jury. [17] It is impossible on this record to make a determination as a matter of law whether Kuehn's actions were reasonable. The question surrounding the primary negligence of Kuehn is one that rests soundly with the jury.

¶16 Next we consider the issue of proximate cause. Negligence is not actionable unless it proximately causes the harm for which liability is sought to be imposed. In a negligent tort case, it is generally a fact question for the jury. It becomes one of law only when there is no evidence from which a jury could reasonably find a causal nexus between the act and the injury. [18]

¶17 It is uncontroverted that Kuehn without signaling or warning, entered the oncoming traffic lane to pass Sankey. It is also uncontroverted that Merrill followed Kuehn to avoid hitting Sankey, and that Merrill's view was obstructed by Kuehn's vehicle unable to see the approaching motorcycle until Kuehn moved back into her lane of traffic. One potential inference from these facts is reflected in the conclusion reached by OHP that the collision was created by the inattention and failure of Kuehn to reduce her speed for Sankey's slowed or stopped vehicle. Although this is not determinative of proximate cause, it demonstrates there is at least some evidence of a causal nexus between Kuehn's actions, the collision, and plaintiffs' damages, making summary judgment improper.

¶18 This Court has previously rejected an argument made in a multiple vehicle negligence case with almost identical facts where a co defendant without having a direct collision, like Kuehn, urged this Court to declare as a matter of law their actions represented a "condition" and not a "proximate cause" of the underlying injuries and damages, seeking judgment in their favor. [19] We have consistently held that where facts relevant to questions of primary negligence are in dispute, the issue must be presented to the jury. Likewise, whether the injuries flowing from the original negligence could have been foreseen is a question within the realm of fact and not law. [20] The resolution of whether Kuehn's actions were a proximate cause of plaintiffs' injuries is one within the sound discretion of the jury and is not a question of law.

¶19 This Court has continually held disputed factual determinations that require weighing the credibility of witnesses and the weight of testimony are to be left to the exclusive province of the jury. [21] A summary judgment cannot become a substitute trial by affidavit instead of a trial according to law.[22]

¶20 This Court expresses no view on whether Kuehn's actions constituted negligence. The directive is simply that the evidence before this Court contains disputed material facts as well as undisputed material facts that could lead to conflicting inferences. It is the long standing policy of our jurisprudence that such decisions rest solely and soundly with the trier of fact. Accordingly, the trial court erred when it entered summary judgment in favor of Kuehn.

CERTIORARI PREVIOUSLY GRANTED;
COURT OF CIVIL APPEALS' OPINION VACATED;
DISTRICT COURT'S JUDGMENT REVERSED;
AND MATTER REMANDED FOR FURTHER PROCEEDINGS

REIF, C.J., WATT, EDMONDSON, COLBERT, GURICH, JJ. - CONCUR

COMBS, V.C.J. (by separate writing), KAUGER, WINCHESTER, TAYLOR, JJ. - DISSENT

FOOTNOTES

[1] The Plaintiff filed the Petition spelling this defendant's name as "Treresa" Hays-Kuehn. Ms. Kuehn files all of her pleadings with the style as "Teresa" which appears to be the correct spelling of her name. For the purpose of this appeal, Ms. Kuehn's first name will be reflected as "Teresa".

[2] Plaintiffs later filed a Dismissal Without Prejudice against the other two defendants; R. Vol. 1 of 3 Tab 5, Dismissal Without Prejudice of Defendant Sankey Only, filed by Plaintiff, Fargo, March 24, 2011; R. Vol. 1 of 3 Tab 9, Dismissal Without Prejudice Only as to Defendant Ginger Merrill, filed by Plaintiffs Estate of Patterson and Fargo, July 12, 2012; R. Supp., Dismissal Without Prejudice, as to Sankey, filed by Plaintiff Estate of Patterson, June 12, 2012.

[3] In re Macfarline, 2000 OK 87 ¶ 3, 14 P.3d 551; also see Prudential Ins. Co. Of America v. Glass, 1998 OK 52 ¶ 3, 959 P.2d 586.

[4] In re Macfarline and Prudential Ins. Co. Of America, see note 3, supra; Jackson v. Jones, 1995 OK 131 ¶5, 907 P.2d 1067.

[5] Union Transp. Co. v. Lamb, 1942 OK 13, 123 P.2d 660.

[6] Id. at ¶19. 

[7] Seitsinger v. Dockum Pontiac, Inc., 1995 OK 29, 894 P.2d 1077, 1079.

[8] In re Macfarline, see note 3, supra.

[9] In re Macfarline, see note 3, supra.

[10] Jackson v. Jones, see note 4, supra.

[11] Union Transp. Co. V. Lamb, ¶ 13, see note 5, supra., "Negligence comprehends a failure to exercise due care as required by the circumstances of the case; a failure to do what a person of ordinary prudence would have done under the circumstances or the doing of what such a person would not have done under the circumstances. A determination of the requirements of due care as the same should be exercised by an ordinarily prudent person rests in the first instance wtih the jury, and it is only where reasonable men would not differ or where the law definitely prescribes the standard of duty that the court may properly interfere with or ignore the determination of that fact-finding group."

[12] Id.

[13] Union Transp. Co. V. Lamb, ¶ 19, see note 5, supra..

[14] Jackson v. Jones, see note 4, supra.

[15] Id. 

[16] Union Transp. Co. v. Lamb, see note 5 supra., Green v. Sellers, 1966 OK 65, 413 P.2d 522; Breno v. Weaver, 1952 OK 407, 252 P.2d 487.

[17] Green v. Sellers, see note 16 supra., Dirickson v. Mings, see note 18 infra.; Thompson v. Walton, 1956 OK 173, 297 P.2d 1084.

[18] Jackson v. Jones, see note 4, supra.; also see Thompson v. Presbytarian Hospital, Inc., 1982 OK 87, 652 P.2d 260; Dirickson v. Mings, 1996 OK 2 ¶ 9, 910 P.2d 1015, summary judgment is improper, and it is a question for jury whether parked car on side of road at night time was "condition" or proximate cause of plaintiff's collision and injuries.

[19] Jackson v. Jones, see note 4, supra.

[20] Dirickson. see note 18, supra.

[21] Barnes v. Okla. Farm Bureau Mutual Ins. Co., 2000 OK 55 ¶ 3, 11 P.3d 162.

[22] Malson v. Palmer Broadcasting Group, 1997 OK 42 ¶ 11, 936 P.2d 940.

 

COMBS, V.C.J., with whom WINCHESTER and TAYLOR, JJ., join, dissenting:

¶1 This cause concerns the potential tort liability of the driver of a motor vehicle involved in the events of a crash that killed the operator of a motorcycle and severely injured the passenger. The majority reaches the conclusion that summary adjudication is inappropriate because: 1) whether Appellee violated a duty of due care to Appellants when she passed a stopped vehicle is a question to be resolved by the trier of fact; and 2) whether Appellee's actions were the proximate cause of the Appellants' damages or merely a condition is a question for the trier of fact. Because Appellee's general duty of due care did not extend to guarding against negligent acts of other drivers, I respectfully dissent.

¶2 The question of whether a defendant owes a duty of care to a plaintiff presents a question of law. Lowery v. Echostar Satellite Corp., 2007 OK 38, ¶12, 160 P.3d 959; Delbrel v. Doenges Bros. Ford, Inc., 1996 OK 36, ¶7, 913 P.2d 1318. The duty may arise from a set of circumstances which would require the defendant to foresee the particular harm to the plaintiff. Lowery, 2007 OK 38, ¶13. A majority of this Court recently reiterated the importance of foreseeability in establishing duty in a negligence action in Wood v. Mercedes-Benz of Oklahoma City, where we stated:

"[o]ne of the most important considerations in establishing a duty is foreseeability. Foreseeability is critical as it determines (1) to whom a duty is owed and (2) the extent of the duty. A defendant owes a duty of care only to foreseeable plaintiffs. As for the extent of the duty, it too is determined in great part by the foreseeability of the injury. Whenever the circumstances attending a situation are such that an ordinarily prudent person could reasonably apprehend that, as the natural and probable consequences of his act, another person will be in danger of receiving an injury, a duty to exercise ordinary care to prevent such injury arises."

2014 OK 68, ¶7, 336 P.3d 457 (quoting Weldon v. Dunn, 1998 OK 80, ¶11, 962 P.2d 1273 (citations omitted)).

¶3 The majority correctly states that drivers of motor vehicles have a general duty to exercise due care in the operation of their vehicles. However, the inverse is also true: drivers may reasonably rely on the assumption that other drivers will also exercise due care. See Griffeth v. Pound, 1960 OK 133, ¶9, 357 P.2d 965. As the Court of Civil Appeals correctly determined, this Court has stated clearly that the driver of an automobile is not bound to anticipate negligence on the part of another driver, or that another driver will act in violation of the law. Griffeth, 1960 OK 133, ¶9.

¶4 The importance of a legal duty in any action for negligence can be summarized thusly:

[a]ny actionable claim for negligence requires three fundamental elements: 1) the existence of a duty on the part of the defendant to protect the plaintiff from injury; 2) a breach of that duty by the defendant; and 3) injury to the plaintiff proximately resulting therefrom. Berman v. Lab. Corp. of America, 2011 OK 106, ¶16, 268 P.3d 68; Smith v. Hines, 2011 OK 51, ¶12, 261 P.3d 1139; Scott v. Archon Group, L.P., 2008 OK 45, ¶17, 191 P.3d 1207. The threshold question in any negligence action is whether the defendant has a duty to the plaintiff. Sholer v. ERC Mgmt. Group, LLC, 2011 OK 24, ¶11, 256 P.3d 38; Scott, 2008 OK 45, ¶17; Pickens v. Tulsa Metro. Ministry, 1997 OK 152, ¶8, 951 P.2d 1079. The reason for this threshold question is that there can be no negligence in the absence of a defendant's duty to the plaintiff. Scott, 2008 OK 45, ¶17; Tucker v. ADG, Inc., 2004 OK 71, ¶21, 102 P.3d 660; City of Tulsa v. Harmon, 1931 OK 73, ¶37, 299 P. 462. The question of whether a duty exists is properly a question of law for the court. Bray v. St. John Health Sys., Inc., 2008 OK 51, ¶6, 187 P.3d 721; Scott, 2008 OK 45, ¶17.

Wood v. Mercedes-Benz of Oklahoma City, 2014 OK 68, ¶2, 336 P.3d 457 (Combs, J., dissenting).

¶5 Appellee possessed a duty to operate her vehicle with due care so as to not cause foreseeable harm to others, but not a duty to ensure everyone around her did the same. This Court rejected such an extension of foreseeability in Griffith. Appellee's general duty of due care cannot extend to ensuring that all other drivers near her also act with due care. The potential negligence of the vehicle travelling behind her was not foreseeable to Appellee, and therefore she owed no duty to guard against it as a matter of law. I would affirm the opinion of the Court of Civil Appeals.






 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 1997 OK 42, 936 P.2d 940, 68 OBJ 1454, Malson v. Palmer Broadcasting Group
Discussed
 1952 OK 407, 252 P.2d 487, 208 Okla 14, BRENO v. WEAVER
Discussed
 1956 OK 173, 297 P.2d 1084, THOMPSON v. WALTON
Discussed
 1960 OK 133, 357 P.2d 965, GRIFFETH v. POUND
Discussed at Length
 2000 OK 87, 14 P.3d 551, 71 OBJ 2901, IN RE MACFARLINE
Discussed
 1966 OK 65, 413 P.2d 522, GREEN v. SELLERS
Discussed
 1931 OK 73, 299 P. 462, 148 Okla. 117, CITY of TULSA v. HARMAN
Discussed
 1995 OK 29, 894 P.2d 1077, 66 OBJ 1120, Seitsinger v. Dockum Pontiac Inc.
Discussed
 1995 OK 131, 907 P.2d 1067, 66 OBJ 3765, Jackson v. Jones
Discussed
 2004 OK 71, 102 P.3d 660, TUCKER v. ADG, INC.
Discussed
 1996 OK 2, 910 P.2d 1015, 67 OBJ 196, Dirickson v. Mings
Discussed
 1996 OK 36, 913 P.2d 1318, 67 OBJ 953, Delbrel v. Doenges Bros. Ford, Inc.
Discussed
 2007 OK 38, 160 P.3d 959, LOWERY v. ECHOSTAR SATELLITE CORP.
Discussed at Length
 2008 OK 45, 191 P.3d 1207, SCOTT v. ARCHON GROUP, L.P.
Discussed at Length
 2008 OK 51, 187 P.3d 721, BRAY v. ST. JOHN HEALTH SYSTEM, INC.
Discussed
 2011 OK 24, 256 P.3d 38, SHOLER v. ERC MANAGEMENT GROUP, LLC
Discussed
 2011 OK 51, 261 P.3d 1129, SMITH v. HINES
Cited
 2011 OK 106, 268 P.3d 68, BERMAN v. LABORATORY CORPORATION OF AMERICA
Discussed
 2014 OK 68, 336 P.3d 457, WOOD v. MERCEDES-BENZ OF OKLAHOMA CITY
Discussed at Length
 1997 OK 152, 951 P.2d 1079, 68 OBJ 4087, PICKENS v. TULSA METROPOLITAN MINISTRY
Discussed
 1982 OK 87, 652 P.2d 260, Thompson v. Presbyterian Hosp., Inc.
Discussed
 1998 OK 52, 959 P.2d 586, 69 OBJ 2148, PRUDENTIAL INSURANCE CO. v. GLASS
Discussed
 1998 OK 80, 962 P.2d 1273, 69 OBJ 2630, Weldon v. Dunn
Discussed
 2000 OK 55, 11 P.3d 162, 71 OBJ 3219, BARNES v. OKLAHOMA FARM BUREAU MUTUAL INS. CO.
Discussed
 1942 OK 13, 123 P.2d 660, 190 Okla. 327, UNION TRANSP. CO. v. LAMB
Discussed