Lou Ann GRAYSON, Individually, and as Personal Representative of the Estate of Randall Grayson, deceased; and Earl C. Grayson, Appellants,

v.

The STATE of Oklahoma, By and Through CHILDREN'S HOSPITAL OF OKLAHOMA, and Emery Reynolds, M.D., Brent Hisey, M.D., and Estate of Greg Williams, M.D., Appellees.

No. 77487.

Court of Appeals of Oklahoma, Division No. 1.

Sept. 15, 1992.

Curtis L. Culver, Tulsa, for appellants.

John G. Fears, Oklahoma City, for appellee State of Oklahoma.

Randall L. Sewell, Oklahoma City, for appellees, Emery Reynolds, M.D., Brent Hisey, M.D., and Greg Williams, M.D.

## MEMORANDUM OPINION

GARRETT, Judge:

Appellants' decedent, Randall Grayson (Randall), was their ten-year old son. He was admitted to Appellee Children's Hospital of Oklahoma for surgery for the repair and reconstruction of his skull (craniosynostosis). Surgery was performed by Dr. Reynolds, Dr. Hisey, and Dr. Pollay. Dr. Reynolds and Dr. Hisey are Appellees. Dr. Pollay is not a party to this appeal.[1] Dr.

---

1. The trial court entered an order granting summary judgment in favor of Dr. Pollay on the ground that he was protected by immunity under the Governmental Tort Claims Act, 51 O.S.Supp.1985 § 151 et seq. The court found that his involvement with the Decedent "was through his position as faculty member and Chairman of the Neurosurgical Department of the University of Oklahoma Medical College" and was at all relevant times engaged in administrative and/or teaching duties. The trial court also ruled that the other individual defendants, Reynolds, Hisey and Williams, were limited in their potential liability to Plaintiffs in the amount of $100,000.00 pursuant to 51 O.S.Supp. 1990 § 154(D).

Greg Williams, who also treated Randall, died prior to the trial. An "Order Permitting Substitution of Deceased Party" was entered by the trial court, substituting the Estate of Greg Williams as party defendant, in place of Greg Williams, Deceased.

Randall was placed in the Intensive Care Unit (ICU) after surgery, and orders were given that he could receive Codeine for pain, and Phenergan for sedation and vomiting, and these medications were given to Randall. During the evening, R.N. Nancy Roche (Nurse Roche) contacted Dr. Williams by telephone because of Randall's continued vomiting. Dr. Williams authorized the use of additional Phenergan in suppository form, if needed, and Randall was given this medication at 9:30 p.m. He continued vomiting and became unresponsive to painful stimuli. Two CT scans were taken, and neurological examinations were performed. Although Randall had been responsive, and restless, within a short time he was not breathing. CPR was given, but he never regained consciousness. He died shortly thereafter, at 2:15 a.m. on June 17, 1988.

Appellants brought this action against the Appellee Hospital and Appellee physicians for wrongful death and medical malpractice, contending he died from an overdose of Phenergan and codeine in combination.

Appellants presented their evidence at the trial. This appeal arises from the trial court's orders sustaining Appellees' demurrers to Appellants' evidence and the order overruling Appellants' motion for new trial.

█ In Appellants' first proposition of error, they contend their evidence was sufficient to show negligence on the part of the Appellee Hospital and Appellee Physicians. In support of their contention, they cite cases from other jurisdictions [2] and argue that dosages of medication in excess of those recommended by the manufacturer in a package insert are evidence of a deviation from accepted standards of medical care. They also contend that the failure of Nurse

Roche to inform Dr. Williams of previous orders for, and administration of, Phenergan and codeine constitutes a lack of ordinary care understandable to a layman, so that expert testimony is not required. Appellees respond that this exception to the general rule [that testimony of an expert witness is required] applies only where the negligence is so grossly apparent that laymen would have no difficulty in recognizing it. See *Turney v. Anspaugh*, 581 P.2d 1301 (Okl.1978); *Boxberger v. Martin*, 552 P.2d 370 (Okl.1976).

Courts in other jurisdictions are split on the issue of whether giving dosages of medications in excess of the manufacturer's label is prima facie evidence of negligence. The parties have not cited an Oklahoma case, and we know of none, which addresses this precise issue. Among the courts which have addressed this issue are the Utah Supreme Court in *Ramon By and Through Ramon v. Farr*, 770 P.2d 131 (Utah 1989); and the District Court of Appeals in *Salgo v. Leland Stanford Jr. University Bd. of Trustees*, 154 Cal.App.2d 560, 317 P.2d 170 (1957). We find the reasoning in *Ramon* and *Salgo* persuasive. The *Ramon* court held at page 135:

Rather, we think the better rule is that manufacturers' inserts and parallel P.D.R. entries do not by themselves set the standard of care, even as a prima facie matter. A manufacturer's recommendations are, however, some evidence that the finder of fact may consider along with expert testimony on the standard of care.

The *Ramon* court, at page 135, quoted language from *Salgo*, supra, with approval:

Thus, while admissible, [the package insert] cannot establish as a matter of law the standard of care required of a physician in the use of the drug. It may be considered by the jury along with the other evidence in the case to determine whether the particular physician met the standard of care required of him. . . .

2. *Paul v. Boschenstein*, 105 App.Div.2d 248, 482 N.Y.S.2d 870 (1984); *Durkin v. Equine Clinics,* *Inc.*, 313 Pa.Super. 75, 459 A.2d 417 (1983).

We decline to hold that departure from the drug manufacturer's recommendations found on the package insert is prima facie evidence of negligence. We adopt the rule from *Ramon* and *Salgo*, i.e., that the manufacturer's recommendation may be considered *along with all other evidence*. It does not relieve the plaintiff of the burden of proving, through expert testimony, the standard of medical care required of physicians, that a duty existed and was breached, and that this breach of duty resulted in harm to the plaintiff.

■■■■ Appellants' expert witness, Dr. Diane Miller–Hardy, Ph.D., is the chairman and professor of pathology at the College of Osteopathic Medicine in Tulsa, Oklahoma. Appellee Hospital objected to her qualifications to give opinions about nursing care provided to Randall. Appellees Hisey, Reynolds and Estate of Williams objected to her being allowed to testify as to any standard of medical care of physicians, or any departure from that standard, and argued she was not qualified by reason of her background, training and experience to express an opinion as to the cause of death. The trial court overruled the objections "at this time", but later ruled she was qualified to testify with respect to the hospital records.

Dr. Miller–Hardy testified that she is not a pharmacologist or a medical doctor, that she cannot prescribe medications, and has never given medications in a hospital setting or elsewhere. She also testified that she is not a nurse and has never been to nursing school. She stated that the dosage of phenergan given to Randall was within an appropriate range according to the Physician's Desk Reference (PDR), although she stated that caution in dosage is recommended when a phenothiazine [phenergan] is used with opiates and analgesics [codeine]. Although there was no conclusive finding at the autopsy of the cause of death, Dr. Miller–Hardy testified that it was her opinion that Randall's cause of death was a drug overdose. She testified that, based on the records, drug information and depositions, she could find no other explanation for Randall's death. However, when asked whether a drug overdose is something that occurs absent negligence, she answered, "I really don't have an opinion on that."

"[A] demurrer to plaintiff's evidence or motion for directed verdict should be overruled unless there is an entire absence of proof tending to show a right to recover, and in passing upon a demurrer to the evidence or motion for directed verdict, the trial court must consider true all evidence against which the demurrer or motion is directed together with all inferences that may reasonably be drawn therefrom, and disregard all conflicting evidence favorable to the demurrant." See *Fleming v. Baptist General Convention*, 742 P.2d 1087, 1092 (Okl.1987), citing *Condo v. Beal*, 424 P.2d 48 (Okl.1967). In the instant case, the evidence in the form of Dr. Miller–Hardy's testimony falls short of proving that either the hospital or the physicians were negligent in administering the dosages of codeine and phenergan.

Appellants also contend that the deposition testimony of Dr. Williams contains an admission of negligence. Dr. Williams' untimely death occurred between the time of his deposition and the trial. Part of his deposition testimony [including statements made to Dr. Williams by his attorney, Mr. Sewell] was introduced in evidence and read to the jury:

Mr. Culver: Q. Are you saying then that the phenergan given at 21:30 was extra phenergan, is that what you meant?

Mr. Sewell: Was it one at 21:00 [9:00 p.m.] or was it a combination of the two together?

Dr. Williams: A. It was a combination of the two together, the extra phenergan.

Q. It was too much phenergan, wasn't it; is that correct?

Mr. Sewell: Go ahead and tell him what you meant. He wants to know what you meant by extra phenergan?

Dr. Williams: A. He should have received one or the other and not both.

The general principles of proof of causation in a medical malpractice case are the same as an ordinary negligence case.

*McKellips v. Saint Francis Hospital, Inc.,* 741 P.2d 467, 471 (Okl.1987). To sustain a negligence action, a plaintiff must prove: (1) a duty owed by the defendant to the plaintiff to use ordinary care; (2) a breach of that duty; and (3) injury (death) proximately caused by the defendant's breach of duty. *Thompson v. Presbyterian Hospital,* 652 P.2d 260 (Okl.1982); *Rose v. Sapulpa Rural Water Co.,* 631 P.2d 752 (Okl. 1981). The circumstances proved "must warrant the conclusion that a preponderance of the evidence discloses facts and circumstances establishing a reasonable probability that defendant's negligence was the proximate cause of the injury ... [I]f a plaintiff fails to meet his burden of sufficiency of proof of evidence to establish a prima facie issue of causation where the probabilities are evenly balanced or less, a defendant may be entitled to a directed verdict." *McKellips,* supra, at 471.

It cannot be disputed that hospitals and physicians owe a duty of care to their patients. The standard of care required for those engaged in the practice of the healing arts in Oklahoma is measured by national standards. 76 O.S.1991 § 20.1; *Spencer v. Seikel,* 742 P.2d 1126 (Okl. 1987). There is a total lack of evidence, however, in the instant case showing the required standard of care applicable to this case, or that either the hospital or the physicians breached their duty to Randall, or that their actions caused his death. While there may have been merit to the objections to Dr. Miller–Hardy's qualifications as an expert, her testimony was not proof of negligence with regard to Randall's death. In fact, her testimony failed to give an opinion as to what type of care would come within the national standard of care, or the care which would be insufficient to meet that standard. As noted by the trial court in its ruling on Appellees' demurrers to the evidence:

I'm mindful, I cannot disregard although I think the extrajudicial statement puts it back into consideration as far as a demurrer is concerned that the plaintiff's witness Diane Miller–Hardy, their only expert testified that she had no opinion as to whether this death

would have occurred without negligence. I went back with my court reporter and I don't believe she said anything variant to that.

But I think the more credible thing is Dr. Williams extrajudicial statement to use language from the Sisson case, the Court referred to the—to this kind of criterion in looking at the evidence at no point in his testimony does Dr. R testify that an injury such as this does not ordinarily occur under the circumstances absent negligence on the part of the surgeon. Not only did you not have that kind, plaintiff not have that kind of testimony, that you had the testimony that you did have was distinctly and significantly less than that. So that the demurrers to the evidence will be sustained.

We agree with the trial court that Dr. Williams' statement does not suffice as an admission of either a breach of duty or proximate cause.

■ In Appellants' second proposition of error, it is alleged that their evidence was sufficient to satisfy all elements of the doctrine of *res ipsa loquitur,* pursuant to 76 O.S.1991 § 21 and Oklahoma case law prior to codification of § 21. Section 21 provides:

**§ 21. Presumption of negligence**

In any action arising from negligence in the rendering of medical care, a presumption of negligence shall arise if the following foundation facts are first established:

1. The plaintiff sustained any injury;

2. Said injury was proximately caused by an instrumentality solely within the control of the defendant or defendants; and

3. Such injury does not ordinarily occur under the circumstances absent negligence on the part of the defendant.

If any such fact, in the discretion of the court, requires a degree of knowledge or skill not possessed by the average person, then in that event such fact must be established by expert testimony.

Dr. Miller–Hardy's testimony that she had no opinion as to whether a drug over-

dose is something that occurs absent negligence was the only evidence presented by Appellants regarding the third foundational fact required under § 21, and it is clearly insufficient to establish it. See *Sisson by and through Allen v. Elkins*, 801 P.2d 722 (Okl.1990). An inference of negligence arises only when all foundational facts have been established. *Sisson*, supra.

Appellee Hospital asserted below and contends in its response to the petition in error and in its appellate brief that it is immune from liability under the Governmental Tort Claims Act, 51 O.S.1991 § 151 et seq. (the Act), specifically §§ 152(5), 155(5) and 155(28). In view of the above, it is not necessary to consider this contention.

We conclude that the trial court correctly sustained Appellees' demurrers to the evidence and correctly overruled Appellants' motion for new trial.

AFFIRMED.

ADAMS, P.J., and JONES, J., concur.