BURLESON v. WAYNE



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:BURLESON v. WAYNE

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 BURLESON v. WAYNE
2021 OK CIV APP 25
Case Number: 118672
Decided: 05/10/2021
Mandate Issued: 06/30/2021
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2021 OK CIV APP 25, __ P.3d __

 

BRIDGETTE BURLESON, Plaintiff/Appellee,
v.
IVAN WAYNE, M.D., Defendant/Appellant,

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA

HONORABLE DON ANDREWS, TRIAL JUDGE

REVERSED AND REMANDED 

Brad Miller, Jami Rhoades Antonisse, MILLER & JOHNSON, PLLC, Oklahoma City, Oklahoma, for Plaintiff/Appellee

J. Blake Patton, WALDING & PATTON PLLC, Oklahoma City, Oklahoma, for Defendant/Appellant

STACIE L. HIXON, PRESIDING JUDGE:

¶1 Ivan Wayne, M.D. (Wayne), appeals judgment in favor of Bridgette Burleson in a medical negligence action, memorializing the grant of partial summary judgment to Burleson on the issue of liability, and a jury verdict awarding damages in the amount of $125,000.00.[1]

¶2 Burleson alleged that Wayne negligently deflated one of her breast implants while harvesting cartilage from a rib to repair her nasal septum. The trial court awarded partial summary judgment to Burleson on November 5, 2018 on liability and causation, and limited trial to the issue of damages. Burleson did not present expert testimony on summary judgment establishing that Wayne breached his standard of care, or that this breach caused her injury. Instead, Burleson relied on a res ipsa loquitur pattern of proof to present a prima facie case of negligence. However, Burleson failed to meet her burden to establish the necessary foundational facts to support that theory. Her own expert acknowledged that her injury could occur even when the physician has acted completely within his standard of care.

¶3 Based on our review of the record and applicable law, we find the trial court erred by awarding Burleson partial summary judgment on liability and causation, and by proceeding with a trial on damages. The Journal Entry of Judgment of February 4, 2020 is reversed and this action is remanded for new trial.

BACKGROUND

¶4 On August 25, 2014, Wayne performed a surgery to repair Burleson's nasal septum. To do so, Wayne harvested cartilage from one of Burleson's left ribs. Two days later, Burleson noticed that the saline implant in her left breast had deflated and subsequently reported it to Wayne.

¶5 Two years later, Burleson sued Wayne for medical negligence. She moved for partial summary judgment on liability and causation, asserting that Wayne was liable for negligence under a res ipsa loquitur pattern of proof. In support, Burleson asserted it was undisputed that Wayne knew Burleson had previously had a breast augmentation, that her implants were not deflated before the surgery, that the implant was deflated two days after the surgery, that she had suffered no trauma or injury to her left breast prior to the surgery, and that Wayne had offered to correct the deflation.[2]

¶6 Burleson also presented an unsworn letter from her proposed expert,Elliot B. Duboys, M.D. Duboys' letter stated in part that "deflation of a breast implant during the harvest of a rib graft by a 'Facial Plastic Surgeon' performing a harvest of a rib graft without recognizing a breast implant was deflated/damaged would be considered to be a departure from the normal standard of care . . ." and opined that certain precautions should be taken during a surgery to avoid damaging the implant. Duboys' letter did not opine that deflation of the implant would not have occurred in the absence of negligence, and did not address whether Wayne employed his recommended precautions during surgery.[3] Duboys did not identify the cause of the damage to the implant or opine that Wayne's negligence caused it to deflate.

¶7 Wayne filed an initial response to Burleson's Motion before he had deposed Duboys, disputing that he was informed of Burleson's implants, and arguing that delay between the surgery and when Burleson noticed the deflation raised a question of fact on causation. He also presented an email from a plastic surgeon dated several months before the surgery, suggesting the surgeon's office had attempted to call Burleson and reschedule an appointment regarding an exchange of her implants.[4] After Wayne deposed Duboys, he supplemented his response to Plaintiff's Motion for Summary Judgment to add Duboys' sworn testimony. Specifically, Wayne presented the following testimony of Duboys:

Q. Is deflation of a breast implant a known complication of a harvest graft?
A. I believe it's a potential complication.
Q. The deflation of a breast can occur during the harvest of a rib graft, true?
A. I think yes, true.
Q. Even if the harvest of the rib graft is performed completely within the standard of care, deflation of a breast implant is still possible, correct? 
A. Yes.[5]

(Emphasis added.) Duboys contended that Wayne should have employed certain precautions to perform a rib graft upon a patient with breast implants. However, he testified he did not have sufficient information to opine whether or not Wayne had taken those precautions and had met the proposed standard of care:

Q. Any other precautions at the time of trial you will tell the jury should have been implemented?
A. At this moment I can't think of any. There may be some more. I have to give considerable thought to it.

***

Q. As we sit here today of this list of precautions, you just don't have enough information to say whether they were implemented or not?
A. Correct.
Q. As you sit here today, you can't say whether the standard of care was met or not as it relates to those precautions, right. 

***

A. No, I can't.[6]

(Emphasis added.)

¶8 The trial court granted Burleson partial summary judgment on "liability (causation) only," on November 5, 2018, stating, in part:

1. Defendant Wayne knew that Plaintiff Burleson had a left breast implant in place at the time of the surgical procedure that included a rib graft;

2. Defendant Wayne knew that deflation of a breast implant is a potential complication when performing a rib graft;

3. That the presence of an implant requires taking the necessary precautions to avoid damaging the implant which is in the way of the rib graft;

4. Plaintiff Burleson's left breast implant was not deflated before the August 25, 2014 procedure performed by Defendant Wayne;

5. Once her anesthesia had worn off after the August 25, 2014 procedure, Plaintiff Burleson detected that her left breast implant was deflated;

6. Defendant Wayne should have checked for the deflation of Plaintiff Burleson's left breast during the surgical procedure, but failed to do so.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that, under the doctrine of res ipse [sic] loquitur and 76 O.S §21, Plaintiff Burleson has established that her injury was proximately caused by an instrumentality solely in the control of Defendant Wayne, and that such injury would not have occurred absent the negligence of Defendant Wayne. See also Smith v. Hines, 2011 OK 51, 261 P.3d 1129; Robinson v. Okla. Nephrology Assoc., Inc., 2007 OK 2, 154 P.3d 1250.

¶9 The trial court denied a subsequent motion to reconsider its interlocutory ruling, and certified the interlocutory order for immediate appeal. Wayne petitioned the Oklahoma Supreme Court for certiorari to consider the trial court's certified interlocutory order, which was denied.[7] Thereafter, the case proceeded to jury trial on damages on December 9-11, 2019. Wayne's request that the trial court revisit its holding on summary judgment was denied at trial, as was his request to instruct the jury and present evidence on the issue of liability. The jury returned a unanimous verdict for Burleson, awarding her $125,000 in damages. The trial court entered a journal entry of judgment on February 4, 2020, memorializing the grant of partial summary judgment and the jury's verdict.

¶10 Wayne appeals.

STANDARD OF REVIEW

¶11 Wayne appeals from the Court's final judgment, which incorporated its prior partial summary judgment on liability and causation. "When reviewing a judgment the Court may reverse, vacate, or modify any anterior intermediate order involving the merits of the action or any portion thereof. . . . An immediately appealable-by-right interlocutory order which is not appealed or a non-appealable uncertified interlocutory order may thus be subject to appellate review on appeal from the subsequent judgment." Lincoln Farm, L.L.C. v. Oppliger, 2013 OK 85, ¶ 14 n.15, 315 P.3d 971 (emphasis omitted)(citations omitted). As noted above, the grant of partial summary judgment to Burleson was not immediately appealable by right, but was certified for immediate appeal. Because the Oklahoma Supreme Court declined review, the trial court's grant of summary judgment on liability and causation remains at issue, and may be reviewed on appeal of the final judgment.

¶12 Review of a court's ruling on summary judgment is a purely legal issue, and is reviewed de novo, considering the evidence and inferences to be drawn therefrom in the light most favorable to the non-moving party. See Smith v. City of Stillwater, 2014 OK 42, ¶ 21, 328 P.2d 1192. The Court will "examine the pleadings and evidentiary materials to determine what facts are material to plaintiff's cause of action, and to determine whether the evidentiary materials introduced indicate whether there is a substantial controversy as to one material fact and that this fact is in the movant's favor." Ross by and through Ross v. City of Shawnee, 1984 OK 43, ¶ 7, 683 P.2d 535. All inferences and conclusions to be drawn therefrom are viewed in the light most favorable to the nonmoving party. Id.

ANALYSIS

¶13 Wayne contends the trial court erred by granting Burleson partial summary judgment on liability and causation as a matter of law, and proceeding to a trial on damages. Wayne asserts disputed issues of fact exist, precluding summary judgment. The Court agrees.

¶14 To recover damages on her medical negligence claim, Burleson was required to establish: (1) that Wayne owed her a duty to protect her from injury; (2) that Wayne failed to properly exercise or perform his duty; and (3) that Burleson's injuries were proximately caused by Wayne's failure to exercise his duty of care. Thompson v. Presbyterian Hosp., Inc., 1982 OK 87, ¶ 7, 652 P.2d 260.

¶15 First, though the trial court appears to have determined as a matter of undisputed fact that Burleson's implant deflated during surgery, that issue was disputed by Wayne. Burleson did not notice the implant was deflated for two days after surgery. Her own expert acknowledged that implants have an increased possibility of deflating spontaneously as they age. Wayne presented evidence suggesting Burleson was contacted by a plastic surgeon to reschedule an appointment to exchange her breast implants several months prior to the surgery at issue.[8] While a jury could reasonably conclude from the record that Burleson's implant was deflated during surgery, more than one inference arises from the evidence, taken in the light most favorable to Wayne. Further, even if we assume that the implant was deflated during surgery, Burleson did not present evidentiary materials to support the remaining elements of a negligence claim.

¶16 "In medical negligence cases, a physician's negligence is ordinarily established by expert testimony . . . ." Smith v. Hines, 2011 OK 51, ¶ 14, 261 P.3d 1129. The plaintiff bears the burden of proving, through that testimony, "the standard of medical care required of physicians, that a duty existed and was breached, and that this breach of duty resulted in harm to the plaintiff." Grayson v. State by and through Children's Hosp. of Okla., 1992 OK CIV APP 116, ¶ 7, 838 P.2d 546. Expert testimony is not required to establish the cause of an objective injury "where there is competent evidence, without such testimony, to establish the cause with reasonable certainty." Boxberger v. Martin, 1976 OK 78, ¶ 14, 522 P.2d 370. In that instance, the need for expert testimony is limited to establishing the standard of care the physician should have followed. Id.

¶17 Here, Burleson did not present expert testimony on standard of care and causation to support a prima facie case of negligence.[9] Instead, she argued a res ipsa loquitur pattern of proof applied to relieve her of an obligation to demonstrate each element of her negligence claim. However, Burleson's evidentiary materials were not sufficient to support the foundational facts necessary to raise a presumption of negligence, much less to support judgment in her favor on liability and causation.

¶18 "The purpose of the res ipsa loquitur evidentiary rule is to aid the plaintiff in making out a prima facie case of negligence in circumstances when direct proof of why the harm happened is beyond the power or knowledge of the plaintiff." Smith, 2011 OK 51, at ¶ 21. However, negligence is never presumed from the mere fact that treatment is unsuccessful. Sisson by and through Allen v. Elkins, 1990 OK 123, ¶ 6, 801 P.2d 722.

¶19 Under 76 O.S.2011, § 21, "negligence is presumed to have occurred when the plaintiff establishes an injury which was proximately caused by an instrumentality solely within the control of the defendant and would not have occurred absent negligence on the part of the defendant." Smith, 2011 OK 51, at ¶ 21. "The reason for the rule is that, even after examination by plaintiff's expert's following an accident, it is often difficult to develop evidence concerning negligence." Mitchell v. Cox, 1997 OK 139, ¶ 9, 948 P.2d 317. "Under such circumstances it is fairer to require the party who controlled and was responsible for the instrumentality to come forward with proof of the reason for the instrumentality's failure than to require plaintiff, who had no control over it to do so." Id.

¶20 "Once the foundation facts for res ipsa loquitur are established, negligence may be inferred from the injurious consequence without the aid of circumstances pointing to the responsible cause." Harder v. F.C. Clinton, Inc., 1997 OK 137, ¶ 8, 948 P.2d 298 (emphasis omitted). Only then does the burden shift to the defendant to produce further evidence, though the ultimate burden of persuasion remains with the plaintiff. Id.

¶21 To raise a presumption of negligence under a res ipsa loquitur pattern of proof, Burleson was required to show:

1. The plaintiff sustained any injury;

2. Said injury was proximately caused by an instrumentality solely within the control of the defendant or defendants; and

3. Such injury does not ordinarily occur under the circumstances absent negligence on the part of the defendant.

If any such fact, in the discretion of the court, requires a degree of knowledge or skill not possessed by the average person, then in that event such fact must be established by expert testimony.

76 O.S. § 21 (emphasis added). Res ipsa loquitur cannot be invoked until the plaintiff supplies evidence of these foundational facts. Sisson, 1990 OK 123, at ¶ 9. "If the showing of any foundation fact requires a degree of knowledge or skill not possessed by the average person, expert testimony must be adduced." Harder, 1997 OK 137, at ¶ 14.

¶22 Whether the res ipsa loquitur pattern of proof should apply is a question of law for the court. Id. at ¶ 9. "It is a judicial function to determine if a given inference may be drawn from a proffered set of circumstances."[10] Id. Yet, even if the court determines res ipsa loquitur is fit for application to the circumstances of the case, "[w]here the proof is conflicting or subject to different inferences, some of which are in favor of and others against the applicability of res ipsa loquitur, the question must be left to the jury." Id. at ¶ 10. (Emphasis in original).

¶23 Here, the trial court not only concluded that Burleson had established the foundation facts necessary to give rise to a rebuttable presumption of negligence under res ipsa loquitur, but awarded her summary judgment as a matter of law on that basis. This was error. Burleson failed to present evidentiary materials to support the foundation facts under a res ipsa loquitur pattern of proof.[11]

¶24 Whether Burleson's implant deflated during surgery remained a question of fact. Therefore, whether Burleson sustained an injury during surgery and can meet the first element of section 21 remained a question of fact. Because a question of fact remained as to whether Burleson sustained injury during surgery, it follows that Burleson did not establish as undisputed that her injury was proximately caused by an instrument within Wayne's sole control.

¶25 Even if we assume these facts as undisputed, Burleson did not meet her burden to demonstrate that her injury was one which would not ordinarily occur in the absence of negligence. Her own expert acknowledged that a breast implant can rupture during a rib graft even when the procedure is performed completely within the standard of care, i.e., in the absence of negligence.

¶26 Burleson argues that her expert's acknowledgement that it is "possible" to damage an implant is not sufficient to negate her contention that such injury would not "ordinarily" occur in the absence of negligence. However, Burleson bore the burden of establishing the foundation facts to support res ipsa loquitur. She presented no expert testimony establishing that her injury does not ordinarily occur in the absence of negligence.[12] Her assertion that Wayne "acknowledged the probability" that "something happened during surgery to deflate" her implant is also insufficient to establish this element, even if her characterization of Wayne's testimony were accurate.[13]

¶27 To obtain summary judgment, Burleson was required to demonstrate by undisputed material facts that she was entitled to judgment as a matter of law. Burleson's evidence did not support a prima facie case of negligence, let alone establish negligence as a matter of law. The result was a trial on damages, before Burleson had met her burden to prove Wayne was negligent and caused her injury, and without resolving questions of fact relevant to that showing. The Court passes no opinion on whether Burleson can ultimately present sufficient evidence to establish her negligence claim. However, the trial court's judgment in her favor on the record before us must be reversed for further proceedings.

CONCLUSION

¶28 Burleson did not establish through expert testimony that Wayne breached his duty of care or caused her injury. She presented no testimony that her injury would not ordinarily occur in the absence of negligence--her own expert's admission negated this essential element of a res ipsa loquitur pattern of proof. The trial court erred by granting partial summary judgment to Burleson on liability and causation, and therefore erred by proceeding to a trial on damages and granting judgment to Burleson thereafter. We hereby reverse the trial court's judgment of February 4, 2020, and remand for new trial.

¶29 REVERSED AND REMANDED.

FISCHER, V.C.J., and RAPP, J., concur.

FOOTNOTES

[1] Burleson initially filed her action against Wayne and Oklahoma Surgicare, Inc. Oklahoma Surgicare, Inc. was subsequently dismissed from the action and is not named in the trial court's judgment or party to this appeal.

[2] Wayne objected that the offer was inadmissible under 12 O.S.2011, § 2408 (evidence of settlement negotiations inadmissible) and 12 O.S.2011, § 2409 (offers to pay medical expenses not admissible to prove liability). The trial court's order does not reference Wayne's alleged admission, and we assume the trial court disregarded it. Burleson argues Wayne has waived his right to contest liability on appeal because this offer was discussed at trial before the jury, without objection. Trial was conducted on the issue of damages only, over Wayne's objection. Burleson's argument is without merit.

[3] Several of Duboys' precautions actually seemed to anticipate an implant could deflate, and proposed steps to be taken thereafter.

[4] Burleson contended she had not contacted or consulted the surgeon for an exchange of her implants prior to the deflation, and that the call must have been a sales call. At the time of the trial court's ruling, the parties presented no testimony of the surgeon to whom Wayne eventually referred Burleson after she reported the implant was deflated. At trial, the surgeon contended that his office would not have contacted Burleson had she not initiated contact, though the surgeon acknowledged they did not successfully reach her.

[5] Wayne also presented Duboys' testimony which he contended acknowledged that the chance a breast implant would spontaneously deflate increased by 10% a year, or to 90% in the case of nine-year-old breast implants like Burleson's.

[6] As two examples, Duboys opined that Wayne should have used blunt retractors to retract the breast, and should have relied on electrocautery during dissection. Wayne's evidentiary materials submitted on summary judgment and upon his Motion to Vacate suggest he did employ electrocautery and blunt retractors. He did not opine what caused the implant to deflate.

[7] Wayne initially filed Appeal No. 117,718 by Petition in Error, without specifying whether he appealed from a certified interlocutory order under 12 O.S.2011, § 952(b)(3), or as a final judgment certified for immediate appeal under 12 O.S.2011, § 994. The Oklahoma Supreme Court provided Wayne the opportunity to correct, which Wayne did by filing his Petition for Certiorari to review the certified interlocutory order granting partial summary judgment. The Oklahoma Supreme Court declined to review the order, per its discretion under section 952. Burleson argues on appeal that the Supreme Court's discretion not to review a certified interlocutory order is a final order, and dispositive of this appeal, citing
Brown v. Brown, 1994 OK CIV APP 29, 871 P.2d 451. Burleson is incorrect. Brown concerned an instance in which, like Wayne, an appellant incorrectly sought review of a certified interlocutory order by Petition in Error. However, unlike Wayne, he never cured the defect when given notice that the appeal was not proper. Brown was therefore bound by that choice. Here, the Court's decision not to review Wayne's Petition for Certiorari does not preclude review of the judgment entered in this case, incorporating its ruling on liability and causation.

[8] Wayne contended the visit could suggest the implant was deflated, becoming deflated, or had changed in the months prior to surgery.

[9] Burleson did not present expert testimony to establish breach of the standard of care, or that the alleged breach caused Burleson's implant to deflate. Duboys' letter of January 26, 2017, presented on partial summary judgment, appears to opine that failing to recognize an implant has become deflated during surgery is a breach of the standard of care, but does not state that this alleged breach caused the implant to deflate. In any event, Duboys' sworn testimony clarified that he could not opine whether Wayne performed the surgery within the standard of care. Meanwhile, Duboys did not identify what caused the implant to deflate, though he acknowledged implants can deflate spontaneously, and that the risk of deflation increases over time.

[10] However, "[w]hen, at the close of the plaintiff's case the evidence does not demonstrate a sufficient balance of probabilities in favor of negligence, or the issue still rests on conjecture, submission on res ipsa loquitur consideration is not the plaintiff's due." Harder, 1997 OK 137, at ¶ 9.

[11] For this reason, we do not reach Wayne's argument that res ipsa loquitur may not serve as the basis for summary judgment under other facts, or his additional propositions of error related to the conduct of trial.

[12] Burleson has not argued she did not require expert testimony to establish that deflation of an implant does not ordinarily occur in the absence of negligence, nor does that fact appear to be within the ordinary knowledge of the lay juror.

[13] Wayne testified that he believed it was possible, or even probable, that the deflation of the left implant happened somewhere between the time Burleson was put to sleep for surgery, and when she noticed the deflation two days later. He also testified he thought it was possible the implant was damaged during surgery, though he also expressly testified that he did not accept the injury occurred during surgery. Contrary to Burleson's analysis, the record does not establish that Wayne acknowledged it was probable that something happened during surgery to damage the implant, and contains no admission that such an injury would not ordinarily occur in the absence of negligence. Likewise, contrary to Burleson's arguments, Wayne did not admit the injury does not occur in the absence of negligence by testifying he had never before had an implant deflate. The record contains no admission by Wayne that the implant was damaged during the surgery, that the deflation was caused by the surgery, or that damage would not occur in the absence of negligence, irrespective of Burleson's interpretation thereof.






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 1992 OK CIV APP 116, 838 P.2d 546, 63 OBJ 3214, Grayson v. State By and Through Children's Hosp. of Oklahoma
Discussed
 1994 OK CIV APP 29, 871 P.2d 451, 65 OBJ 1209, Brown v. Brown
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1990 OK 123, 801 P.2d 722, 61 OBJ 3082, Sisson By and Through Allen v. Elkins
Discussed at Length
 2007 OK 2, 154 P.3d 1250, ROBINSON v. OKLAHOMA NEPHROLOGY ASSOCIATES, INC.
Discussed
 2011 OK 51, 261 P.3d 1129, SMITH v. HINES
Discussed at Length
 1976 OK 78, 552 P.2d 370, BOXBERGER v. MARTIN
Cited
 2013 OK 85, 315 P.3d 971, LINCOLN FARM, L. L. C. v. OPPLIGER
Discussed
 2014 OK 42, 328 P.3d 1192, SMITH v. CITY OF STILLWATER
Cited
 1997 OK 137, 948 P.2d 298, 68 OBJ 3603, HARDER v. F.C. CLINTON, INC.
Discussed at Length
 1997 OK 139, 948 P.2d 317, 68 OBJ 3614, MITCHELL v. COX
Discussed
 1982 OK 87, 652 P.2d 260, Thompson v. Presbyterian Hosp., Inc.
Discussed
 1984 OK 43, 683 P.2d 535, Ross v. City of Shawnee
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 952, Jurisdiction of Supreme Court
Cited
 12 O.S. 994, Procedure When There is More Than One Claim or Party - Final Judgment
Cited
 12 O.S. 2408, Compromise and Offers to Compromise
Cited
 12 O.S. 2409, Payment of Medical and Similar Expenses
Cited
Title 76. Torts
 Cite
Name
Level

 76 O.S. 21, Presumption of Negligence
Discussed


 
 








 
 
 
 

 
 




 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA