OSCN Found Document:ONDOBO v. INTEGRIS BAPTIST MEDICAL CENTER

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 ONDOBO v. INTEGRIS BAPTIST MEDICAL CENTER
2024 OK CIV APP 5
Case Number: 120354
Decided: 05/02/2023
Mandate Issued: 02/01/2024
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II

Cite as: 2024 OK CIV APP 5, __ P.3d __

 

GEORGETTE M. ONDOBO, Plaintiff/Appellant,
v.
INTEGRIS BAPTIST MEDICAL CENTER INC., INTEGRIS HEALTH, INC., ROBERT ALAN SCHIERMEYER, D.O., Defendants/Appellees.

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA

HONORABLE NATALIE MAI, TRIAL JUDGE

AFFIRMED

Georgette M. Ondobo, Middletown, DE Pro Se

Glen D. Huff, David A. Branscum, Peyton S. Howell, FOLIART, HUFF, OTTAWAY & BOTTOM, Oklahoma City, Oklahoma, for Defendants/Appellees

STACIE L. HIXON, JUDGE:

¶1 Georgette M. Ondobo, pro se, appeals the district court's May 17, 2022 journal entry granting summary judgment to Integris Baptist Medical Center Inc.; Integris Health, Inc.; and Robert Alan Schiermeyer, D.O. (collectively "Defendants"). The issue of whether the district court properly granted summary judgment turns on whether the court abused its discretion in finding the affidavit of Defendants' medical expert was admissible but that the purported expert affidavits that Ondobo submitted in opposition to summary judgment were inadmissible. Based on our review of the record and applicable law, we affirm the journal entry.

BACKGROUND

¶2 On July 6, 2012, Ondobo, who was 36 weeks pregnant, underwent an emergency cesarean section ("c-section"), performed by Dr. Schiermeyer at Integris Baptist Medical Center ("the hospital"), after her infant was determined to be in distress. She was discharged from the hospital three days later, or on July 9, 2012. Two days later, or on July 11, 2012, Ondobo again presented to the hospital after a separation of her surgical wound, known as a wound "dehiscence," resulted in a hernia and caused part of her bowel to become entangled in the suture used to close the rectus fascia after her c-section. That same day, Dr. Kenneth Crawford performed surgery to repair the wound dehiscence. Ondobo periodically continued to complain of gastrointestinal issues and had multiple studies conducted in 2014 and 2016, such as a CT scan of her abdomen and a colonoscopy, all of which returned "normal" results. About nine years after her c-section, or in August 2021, Ondobo underwent a hiatal hernia repair procedure. Ondobo maintains that the repair surgery in the days following her c-section, her subsequent gastrointestinal issues, and her 2021 surgery were the result of Dr. Schiermeyer's negligence in performing her c-section.

¶3 Ondobo initially filed suit against Defendants on July 7, 2014, alleging a negligence theory of recovery, though the docket shows the case was dismissed without prejudice. Ondobo later refiled suit on October 10, 2014.[1] After years of litigation, Defendants filed a motion for summary judgment in November 2021. They argued there was no dispute of material fact that Defendants had not breached their duty to Ondobo and had not caused her alleged injuries. Defendants attached evidentiary materials in support of their motion, including an affidavit from Dr. Anthony Jackson, a board-certified physician practicing Obstetrics and Gynecology in Oklahoma City, opining that the medical care rendered to Ondobo was within the standard of care, and no medical negligence by any defendant caused her injury.[2] Defendants also argued that Ondobo had failed to provide any expert testimony to show a breach of the standard of care or causation.

¶4 Ondobo responded to Defendants' motion and submitted her own affidavit purporting to be an expert witness as she is a licensed nurse practitioner. She also attached an affidavit of Seraphin Fokoua, a board-certified physician in Obstetrics and Gynecology in Cameroon, a country located in Africa. Defendants filed a reply to Ondobo's response, arguing that neither affidavit was admissible, and therefore, did not preclude summary judgment. Ondobo also filed a motion to strike Dr. Jackson's affidavit, alleging he was unqualified as an expert witness, to which Defendants objected.

¶5 A hearing was held on March 22, 2022.[3] After hearing the parties' arguments, the district court granted Defendants' motion for summary judgment. The journal entry of judgment was filed on May 17, 2022. Ondobo appeals.

STANDARD OF REVIEW

¶6 Whether summary judgment was properly entered is a question of law, reviewed de novo. Payne v. Kerns, 2020 OK 31, ¶ 10, 467 P.3d 659. Under de novo review, we have "plenary, independent and non-deferential authority to determine whether the trial court erred in its application of the law and whether there is any genuine issue of material fact." Id. Summary judgment will be affirmed only if the Court determines there is no dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Lind v. Barnes Tag Agency, 2018 OK 35, ¶ 9, 418 P.3d 698. All reasonable inferences are taken in favor of the nonmovant. Horton v. Hamilton, 2015 OK 6, ¶ 8, 345 P.3d 357.

¶7 Additionally, pursuant to summary judgment procedure, when evidence is presented showing the existence of uncontroverted material facts, the burden shifts to the opposing party to identify those material facts she alleges remain in dispute and provide supportive evidentiary materials justifying trial on the issue. Dept. of Securities ex rel. Faught v. Wilcox, 2011 OK 82, ¶ 18, 267 P.3d 106. In attempting to show the existence of a question that must be tried, the party may not rely on bald contentions that facts exist to defeat the motion. Id. at ¶ 19. Rather, the party opposing a motion for summary judgment must provide "acceptable evidentiary material," which is evidence that appears to be convertible to admissible evidence at trial. Okla. Dist. Ct. R. 13(b), 12 O.S. Supp. 2013, ch. 2, app.; Estate of Crowell v. Board of County Commissioners, 2010 OK 5, ¶ 8 n.4, 237 P.3d 134.

¶8 In this case, the propriety of granting summary judgment to Defendants depends on the trial court's evidentiary rulings in regard to the alleged expert affidavits the parties submitted. When we review a decision on the admissibility of expert testimony, the clear abuse of discretion standard applies. Christian v. Gray, 2003 OK 10, ¶ 42, 65 P.3d 591; see also Shawareb v. SSM Health Care of Oklahoma, 2020 OK 92, ¶ 20, 480 P.3d 894 (discussing the applicability of the abuse of discretion standard to court's decision on the admissibility of expert testimony in context of summary judgment proceedings). An abuse of discretion occurs when a court bases its decision on an erroneous conclusion of law or where there is no rational basis in evidence for the ruling. Christian, 2003 OK 10, ¶ 43.

ANALYSIS

¶9 Ondobo alleges the district court improperly granted summary judgment to Defendants and that the court failed to rule on her motion to strike Dr. Jackson's affidavit, which she contends should have been stricken. She also argues that her own affidavit and that of Dr. Fokoua were sufficient to preclude summary judgment, entitling her to a trial. We will first discuss whether the Defendants' motion as filed established there were no material facts in dispute so that judgment was proper as a matter of law before turning to the district court's consideration of Ondobo's motion to strike Dr. Jackson's affidavit. Last, we will address whether the district court abused its discretion in finding Ondobo's and Dr. Fokoua's affidavits were inadmissible, and thus, did not preclude summary judgment.

¶10 Like all negligence claims, a prima facie case of medical negligence has three elements: 1) a duty owed by the defendant to protect the plaintiff from injury; 2) a failure to perform that duty; and 3) injuries to the plaintiff which are proximately caused by the defendant's failure to exercise the duty of care. Smith v. Hines, 2011 OK 51, ¶ 12, 261 P.3d 1129. Here, the dispute centers on the latter two elements, i.e., whether Defendants breached their duty of care to Ondobo and whether her injuries were proximately caused by Defendants' failure to exercise the duty of care.

¶11 In seeking summary judgment, Defendants submitted a variety of evidentiary materials, including Ondobo's medical records and her deposition testimony wherein she admitted the wound dehiscence she experienced after her c-section could have occurred without negligence and was a recognized complication of abdominal surgery. She also admitted that no medical provider had advised her that her gastrointestinal issues and hiatal hernia in 2021 were related to her c-section performed in 2012.

¶12 Defendants also relied largely on Dr. Jackson's affidavit, which was essential to the granting of Defendants' motion for summary judgment. According to his affidavit, Dr. Jackson is a physician practicing Obstetrics and Gynecology in Oklahoma City who holds an active board certification with the American Board of Obstetrics and Gynecology. He opined, inter alia, that based on his review of Ondobo's medical records, the medical care provided by Defendants during her
July 6, 2012 admission to the hospital and during the July 11, 2012 readmission was appropriate and within the applicable standards of care. His affidavit also states that after reviewing the report of the surgeon who performed the repair surgery after the c-section, it was his opinion that Dr. Schiermeyer did not perforate the bowel nor did he negligently place the sutures during the c-section. Dr. Jackson also opined that Dr. Schiermeyer took the appropriate preoperative, intraoperative, and postoperative measures to minimize the risk of surgical wound problems. He stated when Ondobo was discharged on post-operative day three, she met all of the standard criteria for discharge, was passing flatus, and showed no indication of wound or bowel problems. He also opined that Ondobo's bowel became entangled in the suture at or near the time the wound separated while she was at home. He further opined based on her medical records that Ondobo's subsequent medical issues, including constipation and hiatal hernia, could not be causally related to complications from the 2012 c-section. His affidavit also stated that no medical negligence by Defendants caused injury to Ondobo, to a reasonable medical probability. Thus, we find Defendants' motion as filed established no dispute as to material facts establishing a lack of breach and causation that would entitle them to summary judgment under a negligence theory of recovery.

¶13 However, before the hearing was held on Defendants' motion for summary judgment, Ondobo filed a motion to strike Dr. Jackson's affidavit, alleging it was inadmissible.[4] As noted above, questions about the qualification of expert witnesses and the admissibility of their testimony will not be reversed absent an abuse of discretion. In her motion to strike, Ondobo purports to be making an objection to Dr. Jackson's affidavit under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786 (1993), adopted by the Oklahoma Supreme Court in Christian, 2003 OK 10. Daubert provided a list of factors for the judge to consider when determining the admissibility of evidence with the focus on the evidentiary relevance and reliability of the scientific methods used by the expert--not on the conclusions they generate. See Christian, 2003 OK 10, ¶ 8.

¶14 Moreover, Title 12, O.S.Supp.2013, § 2702, contained in the Oklahoma Evidence Code, requires a case to present issues in which "scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue. . . ." Additionally, to be admissible as an expert witness such person must be "qualified as an expert by knowledge, skill, experience, training or education" to express the opinion. Id. The criteria specified in section 2702 are set out in the disjunctive, and qualification may be shown in any one or more of the five ways listed. Sharp v. 251st St. Landfill, Inc., 1996 OK 109, ¶ 14, 925 P.2d 546. The issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question. Graves v. Mazda Motor Corp., 675 F. SupP.2d 1082, 1092-93 (W.D. Okla. 2009), aff'd, 405 F. App'x 296 (10th Cir. 2010) (discussing Daubert and Fed. R. Evid. Rule 702, which is similar to section 2702).

¶15 Dr. Jackson's affidavit states that he is a physician practicing Obstetrics and Gynecology in Oklahoma City who holds an active board certification with the American Board of Obstetrics and Gynecology. He further states he has delivered over 5,000 babies during his career and is familiar with the medical and hospitals standards of care applicable to Defendants, including the standard of care applicable to c-sections. The substance of Ondobo's motion is essentially her disagreeing with Dr. Jackson's conclusions, parsing words over the medical terms he used in his affidavit, copying and pasting articles from the internet into her motion, arguing that her opinion as a nurse should be trusted over that of a physician, and reflecting on her experience as a nurse during the COVID-19 pandemic. She also makes various unsupported accusations, including that Dr. Jackson was in a conspiracy or a part of a "cone of silence" to cover up alleged medical malpractice; that he violated various "Codes" allegedly applicable to him, such as the Honor Code of the University of Oklahoma College of Medicine; that he had an alleged financial interest in the outcome of the case and was "golf buddies" with Dr. Schiermeyer. These arguments are not part of a Daubert or section 2702 analysis. Many of her arguments are related to the credibility, but not the admissibility of the evidence, with the admissibility being the proper focus of a Daubert and section 2702 objection. Accordingly, we find the district court did not abuse its discretion by rejecting Ondobo's motion to strike, and could properly grant summary judgment.

¶16 Given our finding that Defendants' motion for summary judgment showed the existence of undisputed materials facts entitling them to summary judgment and our finding that the district court properly found Dr. Jackson's affidavit was admissible, we turn to the court's decision on the admissibility of Ondobo's own affidavit and that of Dr. Fokoua, which she submitted with her response in opposition to Defendants' motion for summary judgment. As noted above, the court's finding that Ondobo's and Dr. Fokoua's affidavits were inadmissible is reviewed for an abuse of discretion.

¶17 In medical negligence cases, the plaintiff bears the burden of proving, through expert testimony, the standard of medical care required of physicians, the breach of an existing duty, and that this breach of duty resulted in harm to the plaintiff. Burleson v. Wayne, 2021 OK CIV APP 25, ¶ 16, 495 P.3d 146.[5]

¶18 Ondobo alleges her own purported expert witness affidavit was admissible to establish the standard of care applicable to Dr. Schiermeyer because she is a licensed nurse practitioner, relying on Gaines v. Comanche County Medical Hospital, 2006 OK 39, 143 P.3d 203. In Gaines, the Oklahoma Supreme Court found a registered nurse familiar with the standards of nursing care of the elderly and critically ill with a certification in wound care may offer testimony concerning the practices of other nurses and the standard of care applicable to bedsores. Gaines explicitly emphasized that it was not deciding the issue of whether a nurse would be an appropriate expert witness in a malpractice case filed against a physician, as is the case here. Id. at ¶ 19. Gaines also made it clear its holding was limited to the "unique facts" presented in that specific case, i.e., a nurse with expertise about bedsores providing expert testimony about the standard of care applicable to other nurses for the prevention/treatment of bedsores. Id. Gaines does not apply to the present case where Ondobo, a licensed nurse practitioner, is attempting to provide expert testimony about the standard of care applicable to a physician performing a c-section and monitoring the patient after said procedure.[6]

¶19 Furthermore, her affidavit is plainly insufficient to prove the applicable standard of care because she admits she does "not pretend to be a medical doctor, nor an expert in Obstetrics and Gynecology, . . . " and states, "I do not pretend to be familiar with the standard of medical care applicable to Obstetricians gynecologists such as [Dr. Schiermeyer], who perform cesarean delivery surgeries for patients with medical conditions similar to mine."[7] Rather, she lists what she asserts is the applicable standard of care for c-sections, which she admittedly found on a publically-available website. We do not find the trial court abused its discretion by determining that looking up information on the internet was insufficient to show Ondobo had "knowledge" that would qualify her to testify as an expert witness. Thus, the district court did not abuse its discretion by finding Ondobo's affidavit was inadmissible.

¶20 Ondobo also argues the district court erred by finding Dr. Fokoua's affidavit was inadmissible. Again, to be admissible as an expert witness a person must be qualified as an expert by knowledge, skill, experience, training or education. 12 O.S.Supp.2013, § 2702. The issue is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question. Graves, 675 F. SupP.2d 1082 at 1092-93. Under Oklahoma law, the standard of care required of those engaging in the "practice of the healing arts" within the State of Oklahoma shall be measured by national standards, i.e., those of the United States of America ("USA"). 76 O.S.2011, § 20.1. Thus, for Dr. Fokoua's affidavit to be admissible, it would have to establish the affiant was qualified by knowledge, skill, experience, training, or education to express an opinion on the standard of care applicable to physicians performing c-sections in the USA.

¶21 Here, the affidavit shows all of Dr. Fokoua's knowledge, skill, expertise, training, and education was gained or occurred outside of the USA, primarily in Cameroon. More particularly, the affidavit states that Dr. Fokoua is board-certified with the Cameroonian Board of Obstetrics and Gynecology, graduated from a university in Cameroon, holds hospital privileges at a hospital in Cameroon, and is a professor in Cameroon. Dr. Fokoua's affidavit merely mentions the affiant has given conferences in the USA without specification and also emphasizes the affiant's "special interest" in Gynecology Robotic Assisted Surgery, which was not conducted in this case. Moreover, in articulating the standard of care Dr. Fokoua alleges is applicable to Defendants in this case, the affidavit does not state how the affiant obtained knowledge of the alleged standard of care or whether this was a standard of care applicable in Cameroon or the USA.[8] There is no information in the affidavit that would allow one to conclude Dr. Fokoua is qualified by knowledge, skill, expertise, training, or education to opine on the standard of care of physicians performing c-sections in the USA. Thus, we find the district court did not abuse its discretion in finding Dr. Fokoua's affidavit was inadmissible.[9] Accordingly, given Ondobo's and Dr. Fokoua's affidavits were found to be inadmissible, we find the district court did not err by finding Ondobo did not meet her burden of overcoming Defendants' motion for summary judgment and granting them summary judgment.

CONCLUSION

¶22 We therefore affirm the district court's May 17, 2022 journal entry granting summary judgment to Defendants.

¶23 AFFIRMED.

BARNES, V.C.J., and WISEMAN, P.J., concur.

FOOTNOTES

[1] Neither petition, which were titled "Complaint and Demand for Jury Trial" were included in the appellate record, but we take judicial notice of the district court's docket. See Foster v. McDowell, 2015 OK CIV APP 20, ¶ 12 n.1, 344 P.3d 1102 (citing Collier v. Reese, 2009 OK 86, ¶ 8 n.7, 223 P.3d 966).

Additionally, Defendants have filed a motion to strike certain documents from the appellate record. After reviewing the motion, we find Ondobo's "Motion for Leave to File Amended Complaint" was improperly included in the appellate record because review of the district court's docket reveals such motion was never granted and the petition not amended. Therefore, such motion shall be stricken from the appellate record, and we will not consider it. The remaining documents listed in Defendants' motion to strike will remain part of the appellate record.

[2] Ondobo sought recovery against the hospital based only on Dr. Schiermeyer's alleged negligence, i.e., a vicarious liability theory of recovery.

[3] At the hearing, the district court noted that though Ondobo's response to Defendants' motion for summary judgment was titled "Plaintiff's Motion for Leave and Trial Request Express Permission to File Her Brief in Opposition to Defendants['] Motion for Summary Judgment," the court and the parties had simply treated it as her response. The court also noted that Ondobo had not obtained permission to file an over-sized response but would consider it as filed.

[4] Ondobo never mentioned her motion to strike at the hearing, yet she complains on appeal that the district court never ruled on it. Although the record before us does not indicate the district court explicitly denied the motion to strike, "[a]bsent explanation of the ruling by the trial court and absent a record to the contrary, we are under a duty to indulge the presumption of correctness with regard to the trial court's general order." KMC Leasing Inc. v. Rockwell-Standard Corp., 2000 OK 51, ¶ 13, 9 P.3d 683. We presume the district court found every special thing necessary to be found to sustain the general finding and conclusion. Id. Given the absence of anything to the contrary in the record before us, because Dr. Jackson's affidavit was essential to Defendants obtaining summary judgment and the court granted summary judgment, we assume the court considered and rejected Ondobo's motion to strike.

[5] Ondobo is correct that expert testimony is not required to establish the cause of an objective injury '"where there is competent evidence, without such testimony, to establish the cause with reasonable certainty."' Burleson, 2021 OK CIV APP 25, ¶ 16 (quoting Boxberger v. Martin, 1976 OK 78, ¶ 14, 552 P.2d 370). However, this is not a case where expert testimony on causation is not required. In any event, even in cases where expert testimony is not required on causation, expert testimony is still needed to establish the standard of care the physician should have followed. Id.

[6] Ondobo testified during her deposition that she was not asserting claims against any of the nurses involved in her care. As noted above, she sought recovery against the hospital based only on Dr. Schiermeyer's alleged negligence.

[7] Ondobo also admitted to not being an expert on the standard of care of an obstetrician/ gynecologist in her deposition.

[8] The affiant provides the exact standard of care used in Ondobo's affidavit that she admittedly obtained from a public website.

[9] Even assuming the affidavit established Dr. Fokoua was qualified as an expert witness on the standard of care in the USA applicable to physicians performing c-sections, the affidavit also largely failed to establish causation. For instance, the affidavit admits there are "many ways" of performing a c-section, and there is "no standard technique" for delivery via c-section. The affiant then opines that the standard of care included using a proper incision technique, but never states that Dr. Schiermeyer used an improper technique or explains how he allegedly departed from a proper technique.

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases

 
Cite
Name
Level

 
2015 OK CIV APP 20, 344 P.3d 1102, 
FOSTER v. McDOWELL
Discussed

 
2021 OK CIV APP 25, 495 P.3d 146, 
BURLESON v. WAYNE
Discussed at Length

Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
2003 OK 10, 65 P.3d 591, 
CHRISTIAN v. GRAY
Discussed at Length

 
2006 OK 39, 143 P.3d 203, 
GAINES v. COMANCHE COUNTY MEDICAL HOSPITAL
Discussed

 
1996 OK 109, 925 P.2d 546, 67 OBJ 2930, 
Sharp v. 251st Street Landfill, Inc.
Discussed

 
2009 OK 86, 222 P.3d 966, 
COLLIER v. REESE
Cited

 
2010 OK 5, 237 P.3d 134, 
ESTATE OF CROWELL v. BOARD OF COUNTY COMMISSIONERS
Discussed

 
2011 OK 51, 261 P.3d 1129, 
SMITH v. HINES
Discussed

 
2011 OK 82, 267 P.3d 106, 
DEPT. OF SECURITIES ex rel. FAUGHT v. WILCOX
Discussed

 
1976 OK 78, 552 P.2d 370, 
BOXBERGER v. MARTIN
Discussed

 
2015 OK 6, 345 P.3d 357, 
HORTON v. HAMILTON
Discussed

 
2018 OK 35, 418 P.3d 698, 
LIND v. BARNES TAG AGENCY
Discussed

 
2020 OK 31, 467 P.3d 659, 
PAYNE v. KERNS
Discussed

 
2020 OK 92, 480 P.3d 894, 
SHAWAREB v. SSM HEALTH CARE OF OKLAHOMA
Discussed

 
2000 OK 51, 9 P.3d 683, 71 OBJ 1763, 
KMC Leasing Inc. v. Rockwell-Standard Corp.
Discussed

Title 12. Civil Procedure

 
Cite
Name
Level

 
12 O.S. 2702, 
Testimony by Experts
Cited

Title 76. Torts

 
Cite
Name
Level

 
76 O.S. 20.1, 
Required Standard of Care for Those Engaged in Practice of Healing Arts
Cited

 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA